### In the MATTER OF L. Vincent RAMUNNO, Appellant.

Supreme Court of Delaware.

Submitted: April 6, 1993.
Decided: June 1, 1993.

L. Vincent Ramunno, Ramunno & Ramunno, Wilmington, for appellant.

Charles Slanina, Disciplinary Counsel, Wilmington, for the Board on Professional Responsibility.

Before VEASEY, C.J., HORSEY and MOORE, JJ.

PER CURIAM.

Respondent L. Vincent Ramunno appeals a finding of the Board on Professional Responsibility (herein the "Board") that he violated Delaware Lawyer's Rule of Professional Conduct 3.5(c) ("Rule 3.5(c)")[1] for undignified and discourteous behavior, during a court proceeding, directed to the judge and opposing counsel. The Board imposed a private admonition. Pursuant to our review under Board Rule 9(e),[2] we consider such a sanction to be inadequate for two reasons. First, the public nature of these proceedings under Rule 9(e) negates the whole concept of a private admonition. Second, the seriousness of Mr. Ramunno's misconduct, and the fact that he was previously reprimanded by this Court for a similar impropriety, require a public reprimand. While we affirm the Board's finding that Mr. Ramunno engaged in unprofessional conduct, we reverse the sanction of a pri-

---

1. Rule 3.5(c) provides:
   A lawyer shall not:
   \* \* \* \* \* \*
   (c) engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct which is degrading to a tribunal.

2. Board Rule 9(e) provides:
   (e) **Review by the Court.** The respondent may file objections to the report within 20 days from the date of service. The Board's dismissal of a complaint, or imposition of probation or reprimand to which no objections have been filed, shall be final, unless otherwise ordered by the Court within 30 days of the last date for filing objections. All other matters shall be determined by the Court. The review will be pursuant to the rules governing civil appeals in the Supreme Court, with the respondent deemed the appellant.

vate admonition and impose a public reprimand. This opinion, therefore, will constitute that public censure.

## I.

The circumstances which led to the finding that Mr. Ramunno had engaged in misconduct are not seriously in issue.

In an office conference on January 16, 1990, before a Superior Court Judge, Mr. Ramunno referred to opposing counsel in a crude, but graphic, anal term. Although the opposing counsel did not hear the insult, the judge did, and cited Mr. Ramunno for contempt. Then, during a second pretrial hearing which took place the following day, Mr. Ramunno moved to disqualify the trial judge on the ground that the contempt citation predisposed the judge against Mr. Ramunno's client. The following pertinent colloquy occurred:

> Mr. Ramunno: . . . and I also got a situation where your [sic] found me in contempt.
>
> The Court: I sure did.
>
> Mr. Ramunno: Fine, which I think of course, is obviously, unreasonable and abuse of discretion. And I got—I mean, I'm paying 150 dollars with a letter that is coming over that you may not like. And if you are already mad at me, you may be mad at me even more.
>
> The Court: Mr. Ramunno, I don't get mad, sir.
>
> Mr. Ramunno: You don't?
>
> The Court: No. Sir, I don't.
>
> Mr. Ramunno: You get even? Is that what you're saying.
>
> The Court: Mr. Ramunno, that comment is an insult to the Court. I again find you in contempt.
>
> Mr. Ramunno: Fine, Your Honor.
>
> The Court: And sui spontae [sic] fine you 150 dollars. It's an insult to my authority, sir.

The Court has affirmed those two findings of contempt. *In the Matter of L. Vincent Ramunno*, Del.Supr., No. 60, 1990, Walsh, J. (December 19, 1990) (ORDER). After the Superior Court trial, opposing counsel referred this matter to the Board which subsequently charged Mr. Ramunno with violating two counts of Rule 3.5(c) by engaging in undignified or discourteous conduct which is degrading to the tribunal. After an evidentiary hearing, the Board dismissed the charges on the basis that there had not been a clear and convincing showing that Mr. Ramunno engaged in misconduct warranting the additional sanctions.

This Court remanded the matter to the Board, however, ruling (1) that its finding was inconsistent with Board Rule 9(f) which provides that proof of Mr. Ramunno's conviction for any crime is conclusive evidence of the commission of that crime and (2) that the Board erred in determining an allegedly appropriate sanction before deciding whether any professional misconduct had occurred. *In the Matter of L. Vincent Ramunno*, Del.Supr., No. 419, 1991, Holland, J. at 3 (August 2, 1991) (ORDER). On remand, the Board issued a new report, found that misconduct had occurred and imposed a private admonition.

Following receipt of the Report after Remand and Mr. Ramunno's objection, this Court once again remanded the matter to the Board. This Court explained that its previous order did not direct a finding of misconduct on Mr. Ramunno's part, but instead only required the Board to examine the question of misconduct (1) on the merits; (2) within the scope of the rules; and (3) with due consideration of any defenses. *In the Matter of L. Vincent Ramunno*, Del.Supr., No. 419, 1991, Holland, J. at 3 (March 17, 1992) (ORDER). After this, the second remand, the Board again found Mr. Ramunno to have engaged in misconduct and again imposed a private admonition. Significantly, however, the Board stated in its report that:

> [It] was persuaded by the sincerity of the Respondent's testimony that the utterance which led to the Superior Court's first contempt finding had been made in frustration and without Respondent's intending that it be heard by anyone. . . . [It was] also persuaded that the conduct which led to the second contempt finding was more an indelicate handling of a delicate application (a motion to disqualify) than it was an intentional affront to the Court.

*In the Matter of L. Vincent Ramunno,* Board on Professional Responsibility, No. 6, 1990, Report After Second Remand (August 28, 1992).

In his appeal, Mr. Ramunno relies on the above language to show that the Board's findings of fact are inconsistent with its findings of guilt. Mr. Ramunno argues that if, as the Board stated, both his utterance and subsequent colloquy with the court were unintentional, then he cannot be found guilty of intentional disruptive or degrading conduct towards a tribunal under Rule 3.5(c). Mr. Ramunno concludes, therefore, that the Board's findings of fact require a consistent finding of not guilty as to both counts of misconduct.

■■■ On appeal, this Court reviews the Board's factual findings to determine whether the record contains substantial evidence to support those findings. *Matter of Higgins,* Del.Supr., 565 A.2d 901, 906–07 (1989). In this case, it is uncontroverted that Mr. Ramunno referred to opposing counsel in vulgar terms and, in a manner which regardless of whether it was intentional or negligent, was communicated to a third party—the presiding judge. It is also undisputed that Mr. Ramunno engaged in an insolent colloquy with the trial judge on the following day which, implicitly if not explicitly, challenged the court's integrity.

In light of these events, it is irrelevant whether Mr. Ramunno intended to cause a disruptive effect. Instead, the sole question before this Court is whether Mr. Ramunno's rude and uncivil behavior was degrading to the court below. DLRPC 3.5(c). In this context, Rule 9(f) of the Rules of the Board on Professional Responsibility is instructive. In pertinent part, Rule 9(f) provides that "proof of a conviction of the respondent for any crime shall be conclusive evidence of the commission of that crime." In this case, the defendant was convicted of two counts of contemptuous conduct under 11 *Del.C.* § 1271(1). The elements of this offense require proof beyond reasonable doubt that the defendant engaged in:

[D]isorderly, contemptuous or insolent behavior, committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority.

11 *Del.C.* § 1271(1).

As a result of his conviction under Section 1271, and in the absence of any countervailing defenses, it is clear that Mr. Ramunno's disorderly, contemptuous and insolent behavior interrupted the proceedings of the court and impaired the respect due its authority. The fact that the Board, in the sole context of determining an appropriate sanction, also opined that Mr. Ramunno acted unintentionally, neither alters the fact that his unprofessional conduct ultimately degraded the tribunal nor suggests any inconsistency in the Board's holding. Simply put, insulting conduct toward opposing counsel, and disparaging a court's integrity are unacceptable by any standard.

Finally, we are not persuaded that Mr. Ramunno's misconduct was an isolated event in the heat of battle. This is not the first time he has been required to answer for his intemperate actions during a court proceeding. In 1983 this court privately reprimanded Mr. Ramunno for uncivil conduct that did "not measure up to acceptable professional standards". *See Weber v. State,* No. 197, 1981, slip op. (January 17, 1983) (per curiam), which we attach as part of this opinion. We again find his conduct totally unacceptable. Future misconduct of this type on the respondent's part may lead to more serious consequences than the imposition of a public reprimand.

### ATTACHMENT

#### IN THE SUPREME COURT OF THE STATE OF DELAWARE

PAUL E. WEBER, Defendant Below, Appellant,

v.

STATE OF DELAWARE, Plaintiff Below, Appellee.

No. 197, 1981

Submitted: November 12, 1982

Decided: January 17, 1983

Before McNEILLY, QUILLEN and HORSEY, Justices.

Upon Rule to Show Cause;
Reprimand Given.

L. Vincent Ramunno (argued), Wilmington.

*PER CURIAM* (not to be officially reported):

During the processing of this case, on October 12, 1982, counsel for the defendant attempted to file a reply brief in excess of the page limit under Supreme Court Rule 14(d). Briefs exceeding designated limits under the Rules increasingly had become a problem and the Chief Justice had issued two administrative directives on the subject. See Appendix A. The directives in essence say briefs over the designated page limits will not be accepted.

As a result of the attempted filing, a telephone conversation took place between the Chief Deputy Clerk and defense counsel which, at the request of the Court, became a subject of an October 18, 1982 memo from the Chief Deputy Clerk to the Court. See Appendix B. The memo gave rise to an October 26, 1982 order directing issuance of a rule to show cause why sanctions should not be imposed against defense counsel. See Appendix C. A hearing on the rule was held on November 12, 1982. See Appendix D. The hearing on this matter was deliberately segregated from the case on the merits.

Under Supreme Court Rule 102(b), attorneys "are expected to present all matters and papers to the Court with the highest professional competence". Supreme Court Rule 33 provides for sanctions in the following language:

## RULE 33.

### SANCTIONS

Upon failure of a party to comply with any rule or order, the Court may enter an appropriate sanction against the offending party or his counsel, or both, after notice and opportunity to be heard. Such sanction may include the award of reasonable attorneys' fees and the determination of an appeal against the offending party. Disciplinary action, including imposition of a fine, may be taken against any offending counsel.

We think it clear that Rule 33 covers the attorney agent as well as the party litigant and the Court can impose sanctions directly on the attorney agent.

Upon the conclusion of the hearing on the rule to show cause, we confess we had some astonished disbelief that defense counsel's oral performance had occurred. We had an initial reaction that reference to the Board on Professional Responsibility would be appropriate. But, on reflection, it seemed of little value to burden the Board with the annoying chore of determining who said what to whom. We were also mindful that "[j]udges are supposed to be men of fortitude, able to thrive in a hardy climate" [*Craig v. Harney*, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947)] and determined not to act hastily without a careful review of the items attached hereto as appendices.

Having contemplated the matter, we have concluded that defense counsel's conduct in attempting to file the reply brief with excessive pages, in conversing with the Chief Deputy Clerk (in accordance with defense counsel's own version), and in presenting his position orally before the Court falls below an acceptable professional standard. The practice of law involves more than being learned in the law. It involves respect for procedures and civility in professional functions. Perhaps the best test of a professional is how he treats nonprofessionals. We see no benefit in characterizing the conduct in this case. The record set forth in the appendices speaks for itself. We simply conclude that it does not measure up to acceptable professional standards.

Defense counsel is hereby reprimanded.

## APPENDIX A

July 8, 1982

### ADMINISTRATIVE DIRECTIVE

To: The Clerk

Chief Deputy Clerk

All Deputy Clerks

Certain violations and evasions of Rule 14, governing the length of briefs, have

become more frequent and more gross. Briefs are being filed (1) ignoring the Rule altogether; or (2) misconstruing the Rule; or (3) abusing or misconstruing the terms of an Order granting an enlargement; or (4) filing a motion for enlargement simultaneously with the brief violating the Rule.

This lack of compliance with the Rules of the Court on the part of certain members of the Bar must be rectified in order to promote due discipline and to avoid undue difficulty for the Court and other counsel.

Accordingly, effective July 15, 1982, the following procedures will be strictly followed by all Clerks:

(1) Immediately upon presentation, the receiving Clerk will inspect each brief for compliance with the pagination limitation of Rule 14(d), before accepting the brief for filing. If there is non-compliance, and if a copy of an Order of a Justice authorizing such non-compliance does not accompany the brief, the Clerk will reject the brief forthwith and decline to accept it for filing. This Directive will be displayed as authority for such action.

(2) The attorney presenting the brief will be told to see the most available Motion Justice about the matter, without delay, if desired.

(3) The rejection of a brief hereunder will not be deemed to toll the due date of the brief.

/s/ Daniel L. Herrmann
Chief Justice

DLH:jo

cc:  Justice McNeilly
     Justice Quillen
     Justice Horsey
     Justice Moore

October 7, 1982

## ADMINISTRATIVE ORDER

To:  The Clerk
     Chief Deputy Clerk
     All Deputy Clerks

Announced procedures are apparently needed to enforce Rules regarding signing, service, and pagination of notices of appeal, motions, and other documents filed in this Court.

Effective October 15, 1982, the following procedures will be followed by all Clerks:

(1) Promptly upon filing, all notices of appeal shall be examined for timeliness, i.e., filed within 30 days after the order or judgment appealed, as provided in Rule 6. If it is manifest that the 30–day limitation has been exceeded, the matter will be brought to the attention of the Motion Justice forthwith.

(2) Upon presentation for filing, all notices of appeal, motions, and other documents shall be examined (a) for proof of service of copy upon every other party as required by Rule 10(a) and (c) (b) for an original signature by local counsel or *pro se*, as required by Rule 12(a); and (c) for page limitations, under Rule 14(d) in the case of briefs and Rule 30(a) in the case of motions. Violations as to briefs will be governed by Administrative Directive dated July 8, 1982. Violations as to other documents will be brought to the attention of the Motion Justice forthwith.

/s/ Daniel L. Herrmann
Chief Justice

DLH:jo

cc:  Justice McNeilly
     Justice Quillen
     Justice Horsey
     Justice Moore

## APPENDIX B

*Memo*

October 18, 1982

To:  Justice Horsey

From:  Steve Taylor

Re:  *October 12th telephone conversation with L. Vincent Ramunno*

Pursuant to your request, the following is a synopsis of my telephone encounter

with L. Vincent Ramunno, Esquire on Tuesday, October 12, 1982.

Upon my return from oral arguments on Tuesday, JoAnne showed me a reply brief from Mr. Ramunno that exceeded the 20 page limit under Supreme Court Rule 14(d). She had not rejected it immediately because Mr. Townsend said to let me deal with it upon my return from Dover.

I checked the brief and confirmed that it exceeded 20 pages. Furthermore, I checked the docket to see if Mr. Ramunno had filed a motion under Rule 14(d) which he had not. The brief was never formally stamped in and filed with the Court.

I called Mr. Ramunno and informed him that his brief had been rejected by the Court for violating Rule 14(d) as well as the Chief Justice's Administrative Directive of July 8, 1982. I would describe my demeanor toward Mr. Ramunno as formal and succinct since my previous experiences with him have been quite unpleasant.

Before I had finished relaying my message to Mr. Ramunno, he became agitated and began to use profanity while telling me not to be in such a hurry to get off the telephone. I told him that if that was his attitude that I had been instructed by the Court to hang up on any rude and abusive people. Mr. Ramunno launched into a mocking tirade stating that all he had said was hell and that he did not realize that I was so delicate. My memory is that Mr. Ramunno began using profanity at the start of his response to my message; however, I have no clear recollection as to the exact words that he used.

Nevertheless, I informed him that if he could not be civil that I would hang up on him as instructed. Mr. Ramunno's response was that he knew that he had to genuflect to Judges but that he did not know he had to genuflect to clerks as well. Finally, he said to hang up if I wanted to do so, but he only wanted to ask a question.

I told Mr. Ramunno that it was always the same with him, that he was always right and everyone else was always wrong.

For some reason, he seemed to calm down after my statement. I immediately noticed the difference in his tone and said that if he was now going to be civil instead of rude that I would answer his question.

He wanted to know how to rectify his error in order that his brief would be accepted by the Court. I told him that it was too late to file a Motion under Rule 14(d) and that he would have to contact Justice Horsey as to how to proceed. I gave him the telephone number for Justice Horsey's office.

The entire conversation took place at 4:50 and lasted approximately 3 minutes. I have omitted parts of Mr. Ramunno's remarks to me since I did not clearly hear them as he was attempting to talk over my voice.

SDT:ldt

cc: Honorable Daniel L. Herrmann

Honorable John J. McNeilly

Honorable William T. Quillen

Honorable Andrew G. T. Moore, II

## APPENDIX C

### IN THE SUPREME COURT OF THE STATE OF DELAWARE

Paul E. Weber,

Defendant Below, Appellant,

v.

State of Delaware, Appellee.

No. 197, 1981

### ORDER DIRECTING ISSUANCE OF RULE TO SHOW CAUSE

And Now to Wit this 26th day of October, 1982, it appearing from the attached memorandum of the Chief Deputy Clerk of this Court, Stephen D. Taylor, dated October 18, 1982 (prepared at the request of the Court) that L. Vincent Ramunno, Esquire, in a telephone conversation on October 12, 1982 with the Chief Deputy Clerk relating to a violation of Supreme Court Rule 14(d), acted in a profane, abusive and disrespectful manner unbecoming to a member of the Bar of this Court; that L. Vincent Ramun-

no, Esquire thereby evidenced gross discourtesy to another officer of the Court who was carrying out his delegated duties; and it further appearing that L. Vincent Ramunno, Esquire may have misbehaved in violation of his oath of admission to the Bar of this Court, Rule 102(d) of this Court, and The Delaware Lawyer's Code of Professional Responsibility: DR 1–102(A)(1) and (5) and 7–106(C)(6);

NOW, THEREFORE, the Clerk of this Court is directed to issue to L. Vincent Ramunno, Esquire a Rule to Show Cause directing him to appear before the Supreme Court at 12:30 p.m. on Monday, November 8, 1982 to show cause why sanctions under Rule 33 should not be imposed against him for his conduct on October 12, 1982.

BY THE COURT:

/s/ Henry R. Horsey
Justice

SUPREME COURT OF DELAWARE

Paul E. Weber,

Defendant Below, Appellant,

vs.

State of Delaware,

Plaintiff Below, Appellee.

No. 197, 1981

TO: L. Vincent Ramunno, Esq.

10th & French Streets

Wilmington, DE 19801

The Court directs that, you appear before the Supreme Court of Delaware, in the Court Room, on Monday, November 8, 1982 at 12:30 p.m., to show cause why sanctions under Rule 33 should not be imposed against you for your conduct on October 12, 1982.

/s/ T.E. Townsend, Jr.
Clerk

October 26, 1982

Date

## APPENDIX D

### IN THE SUPREME COURT OF THE STATE OF DELAWARE

- - -

Paul E. Weber,

Defendant Below, Appellant,

v.

State of Delaware,

Plaintiff Below, Appellee.

No. 197, 1981

Court Below: Superior Court of The State of Delaware in and For New Castle County Cr. A. Nos. IN81–03–117; 118

- - -

November 12, 1982 (corrected)

Dover, Delaware

10:00 a.m.

- - -

BEFORE:

JUSTICE JOHN J. McNEILLY
JUSTICE HENRY R. HORSEY
JUSTICE WILLIAM T. QUILLEN

- - -

APPEARANCE:

L. VINCENT RAMUNNO, ESQ.
10th and French Streets
Wilmington, Delaware 19801
Counsel for Defendant Below, Appellant

- - -

RETURN OF RULE TO SHOW CAUSE

November 12, 1982 (corrected)
10:00 a.m.
Supreme Court Chambers

PRESENT:

As noted.

- - -

JUSTICE McNEILLY: Mr. Ramunno, would you come forward, please?

JUSTICE HORSEY: Mr. Ramunno, this is the extended time for the return of the Rule to Show Cause, and you're familiar with the rule. I won't read the rule, but in connection with that rule you wrote a letter to me asking that I disqualify myself because I had discussed the matter with our Chief Deputy Clerk, Mr. Taylor, and because I had asked him to write a synopsis of his telephone conversation with you, which is the basis for this rule having been issued.

I decline to recuse myself. I don't think you stated grounds. I was the Motion Justice in October. It was my duty to handle matters, all matters, and matters of this nature. Someone in the court had to do it. I undertook to do it; I don't think I've shown my prejudice by virtue of the fact that I've issued the rule and requested Mr. Taylor to submit memorandum.

JUSTICE McNEILLY: It should also be made clear on the record that the rule is not Justice Horsey's rule; it's the Court's rule.

MR. RAMUNNO: Very well.

JUSTICE McNEILLY: In your letter you referred to the rule as being Justice Horsey's rule, which is not proper.

MR. RAMUNNO: I understand.

JUSTICE McNEILLY: Now, Mr. Ramunno, this is the morning for the return of the rule. What do you have to say?

MR. RAMUNNO: I guess if I could—I have a lot of things to say, I'll try—

JUSTICE McNEILLY: It's your time to speak.

MR. RAMUNNO: Well, you can rest assured, Your Honor, that I will speak—maybe the best way to start is to tell you what happened factually rather than getting into the legal issues, which I will also get into. The—factually what happened is that whatever day that was, October 12th, we filed our brief in this Weber case, which was a murder case, and a very serious one, of course. And I received a call from Mr. Taylor who told me—that conversation was something like, "We have your brief and it

violates the rules; it's in excess of the pages required; and by administrative directive of the Chief Justice of the Supreme Court it's rejected, and you can either pick it up or we can throw it away.

"Do you want to pick it up or do you want us to throw it away?"

And I said something like, "Wait a minute, wait a minute, what's going on, wait a minute." And he repeated himself again by going on and saying that it was by directive of the Chief Justice of the Supreme Court and so forth and so on, and repeated himself. I said, "Wait a minute, wait a minute." I said, "wait a minute" two or three times. And he—

JUSTICE McNEILLY: Now, Mr. Ramunno—

MR. RAMUNNO: I thought you—

JUSTICE McNEILLY: —before you go too extensively into this—

MR. RAMUNNO: Yes.

JUSTICE McNEILLY: —we're not sitting here this morning as a fact-finding body.

MR. RAMUNNO: Well, then what are you sitting as if you're not sitting as a fact-finding—

JUSTICE McNEILLY: But what we want to know is what you have to say in response to this rule.

JUSTICE McNEILLY: All right.

MR. RAMUNNO: I'm telling you what happened. You have before you a memorandum from Mr. Taylor that tells you what happens. And I'm telling you what happened.

JUSTICE McNEILLY: Are you disputing those facts?

MR. RAMUNNO: Of course.

JUSTICE McNEILLY: All right.

MR. RAMUNNO: Thank you.

Now—so he said—he continued to talk in such a manner that he was talking as if not only in like a robot that was simply repeating himself, but he was talking in such a way that it was like if I dare to say anything against the administrative directive of the Chief Justice.

JUSTICE McNEILLY: Now wait a minute.

MR. RAMUNNO: Yes.

JUSTICE McNEILLY: You understand, do you not, that the practice of law in this State, it's a privilege and not a right?

MR. RAMUNNO: No, I don't understand that. I—

JUSTICE McNEILLLY: You don't understand that?

MR. RAMUNNO: No. I didn't think it was a privilege. I thought—

JUSTICE McNEILLY: You think you have a right to practice law?

MR. RAMUNNO: Certainly, as long as I abide by the laws and so forth, I have a right. You going to take that right away from me because I told the law clerk something like "hell"? Is that what you're going to tell me?

JUSTICE McNEILLY: This court grants the privilege and this court can take that privilege away.

MR. RAMUNNO: Well, if you think that I did something to take it away, then you take it away, Chief Justice, because I didn't do a thing to have it taken away. But if you want me to continue, I will. If you don't want to hear it, I won't go any further.

JUSTICE McNEILLY: All right, continue.

MR. RAMUNNO: Fine. He continued to talk as if I dared to even question what he was saying, the Chief Justice's foot was going to come through that roof and swat me as I sat there as an insignificant fly, insignificant bug.

I finally said to him, I said—and he sort of like corroborates—"Wait a minute. What's your hurry to get off the phone? What's going on?" I said, "What the hell is going on?" And I raised my voice, no question about it. I'm not saying that I didn't. Just like I raise my voice sometimes in this court and other courts when I talk to people that are unreasonable and act like bureaucrats. In any event—so I raised my voice and he started getting ex-

cited. "This is profane. I don't have to take this profanity." And, as he says, I said to him, I said, "I didn't realize"—you know—"I'm sorry if 'hell' upset you. I didn't realize you were that delicate that 'hell' would upset you." And that's the only word that I used, was "hell."

And as you can see in his memo, he has absolutely no other word that he could point to, because there was no other word used. So at that point, after that all happened, I said, "Look, all I want to do is ask a question." And then he said, "Oh, what's your question?" And then everything calmed down. I asked him the question, he told me the answer. I apologized for losing my temper. He said, "Fine, no problem," and that was the end of it. The next thing I know I get a letter from the Rule to Show Cause. And that's what happened and I'll be glad to talk about the law if you want.

JUSTICE McNEILLY: All right. Let's hear the law.

JUSTICE HORSEY: Well, before you get to the law—

MR. RAMUNNO: Sure.

JUSTICE HORSEY: —Mr. Taylor says in his memo—and I'm quoting him—"Mr. Ramunno's response was that he knew he had to genuflect to judges but he did not know he had to genuflect to clerks as well." Is that substantially correct?

MR. RAMUNNO: Substantially. I think I may have said something like I know that some judges expect me to genuflect, but I didn't realize that I have to genuflect to clerks, yes, that's substantially correct. That was in the (inaudible)

So, so far as the law is—first of all—this is issued under Rule 33. Rule 33 talks about party—upon failure of a party to comply with any rule or order of this Court. And I suppose that you're saying I violated Rule 102(d) of this Court, which there is no such rule. There is no 102(d) that I could find, and I've looked and looked. There is a 102(b) and I suspect that whoever drafted the order must have meant 102(b), but I don't know if that's true. 102(b) talks about things like the

attorneys shall conduct themselves in a manner consistent with the letter and spirit of the rules, no unreasonable delays and so forth  So I don't know—so we get back to the only other rule that I can think of that's been cited is the D.R. Rules, and the D.R. Rules there is 102(a)(1) and 102(a)(1) talks about a lawyer shall not violate a disciplinary rule. I don't know what disciplinary rule I violated. And (a)(5) talks about engage in conduct that is prejudicial to the administration of justice. And I don't know what's prejudicial to the administration of justice what I did, I mean, not the conversation I had with Mr. Taylor. And then Rule—the other one cited is Rule D–7106, which talks about trial conduct. And that's what it's labeled as. And 6 says engage in undignified or discourteous conduct which is degrading to a tribunal. This was not in a courtroom. It was a telephone conversation with a clerk and, you know, I don't know how that could be degrading to a tribunal.

But there are many cases that courts have talked about what an attorney says or can say outside the courtroom and attorneys have the right to say anything they want, just like any other individual. I don't give up my right to speak and freedom of speech and get to tell you what I think or tell the clerk what I think just because I'm an attorney. I mean, in fact, in the case of New York Justice of Appellate Division v. Erdman decided in 1973 by the New York Court of Appeals, the attorney wrote an article in Life which called judges whores. He said the Appellate Judges are whores who become madames, he says, and I would like to be a Judge. And went to say—there were some worse things than that which I don't particularly need to repeat here.

And the Court says—this is nothing that's sensible about this, that is, that he has a right to speak and give his opinion. And, frankly, in that case—in this case—all I was doing was telling Mr. Taylor that he shouldn't treat me like an insignificant fly or an insignificant—that he was some kind of bureaucrat that could just go boom, boom, boom because he had the administrative directive of the Chief Justice of the Supreme Court telling him to do that, he could have said it differently. I mean, he could have said to me "I'm sorry," you know, "but this is not acceptable." He didn't have to act like some kind of a robot doing boom, boom, boom and couldn't wait to get off the phone.

So I reacted and I reacted the way that, you know, I react in other situations. And I didn't do a thing that was wrong or a thing that was a violation of the rules or a thing that was unprofessional. If you're going to do this to me, then any time I talk to a clerk at Superior Court, Superior Court can do it, and Magistrate Court can do it, and every other Court can do it. We're not talking about me acting as—in violation of the law. We're talking about you being concerned about what I said to your law clerk.

I can't—you know, I can talk to—I can call up the Governor and tell him to go to hell, and I certainly think I have a right to call up the law clerk—I didn't call him; he called me—and tell him what I think if I don't agree with what he says.

That's all I have to say.

JUSTICE McNEILLY: All right. We've heard your position, Mr. Ramunno and you'll be hearing from the Court. We have the matter under advisement.

MR. RAMUNNO: Thank you.