In the Matter of a Member of the
Bar of the Supreme Court of
the State of Delaware:

Richard L. ABBOTT, Respondent.

No. 676, 2006.

Supreme Court of Delaware.

Submitted: Feb. 14, 2007.
Decided: May 2, 2007.

Richard L. Abbott, Abbott Law Firm, Hockessin, DE.

Andrea L. Rocanelli, Office of Disciplinary Counsel, Wilmington, DE.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

PER CURIAM:

This is an attorney discipline matter involving charges of professional misconduct against Richard L. Abbott, Esquire ("Mr. Abbott" or "Respondent") that were filed by the Office of Disciplinary Counsel ("ODC"). This matter originates from the arguments set forth in the opening and reply briefs filed by Mr. Abbott on behalf of his client, 395 Associates, LLC, in an appeal to the Superior Court from a decision of the New Castle County Board of License, Inspection & Review ("LIRB"). The petition filed by ODC alleges that in those briefs, the Respondent's "written advocacy [was] undignified, discourteous, and degrading to the tribunal, as well as prejudicial to the administration of justice." The petition alleges several separate bases for finding a violation of Rules 3.5(d) and 8.4(d) of the Delaware Lawyer Rules of Professional Conduct ("the Rules of Professional Conduct").[1]

In a Final Report, the Board on Professional Responsibility ("the Board") determined that there was not sufficient evidence to conclude that Mr. Abbott had violated either Rule 3.5(d) or 8.4(d) of the Rules of Professional Conduct. Accordingly, the Board dismissed all of the above

---

1. Rule 3.5(d) states that "A lawyer shall not: ... (d) engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct that is degrading to a tribunal."

Rule 8.4(d) states that "It is professional misconduct for a lawyer to: ... (d) engage in conduct that is prejudicial to the administration of justice."

claims. The Board stated that, although Respondent's briefs used "unnecessary invective and rhetoric" and were "obnoxious," it could not find clear and convincing evidence of a violation of either Rule 3.5(d) or Rule 8.4(d). The Board noted, however, "this has been a difficult case.... The Respondent has come close to crossing the line with respect to unprofessional litigation conduct because many of the words he chose and the tone of his arguments were unnecessarily sarcastic and strident in tone."

The ODC has filed objections to the Board's Final Report and asked this Court to sanction the Respondent for his actions. We have determined that the Respondent's behavior violates both Rules 3.5(d) and 8.4(d) of the Rules of Professional Conduct and goes beyond being *merely* unprofessional. We also conclude that the appropriate sanction is a public reprimand.

### Standard of Review

■■■ This Court has the "inherent and exclusive authority to discipline members of the Delaware Bar."[2] Although recommendations by the Board of Professional Responsibility are helpful, we are not bound by those recommendations.[3] Our role is to review the record independently and determine whether there is substantial evidence to support the Board's factual findings. We review the Board's conclusions of law *de novo*.[4]

### Respondent's Conduct

■■■ The ODC argues that certain specific acts by the Respondent constituted a violation of the Rules of Professional Conduct. First, the ODC alleges that the Respondent violated these rules by "accusing opposing counsel of fabricating legal grounds for the administrative decision challenged by 395 Associates." Second, the ODC contends that the Respondent also made other improper "inflammatory characterizations in his briefings to the Superior Court." Specifically, the ODC identifies the following statements contained in the Respondent's opening and reply briefs:

- A *fictionalized* account of the hearing written by lawyers.
- Miraculously, with the aid of legal counsel's imaginative and creative writing skills, the supposed reasoning for the LIRB's decision became dramatically more extensive and well-reasoned.
- *Fictional* account of the LIRB hearing prepared weeks later.
- The written decision creates an *imaginary, make-believe* set of reasons for the LIRB's findings.
- The County cites no legal authority to support its assertion that the LIRB's attorney may *fabricate conclusions* of the LIRB in the written decision.
- Certainly the County does not believe that the LIRB's attorney truly has the authority to *write decisions from whole cloth.*
- *Laughably,* the County found that the violation was not resolved based on an *illogical and irrational dissertation.*
- Why would the County want to start making decisions on the merits when it could continue to run 395 into the ground for *sport* based on whatever *whimsical speculation* the County could conjure up?

---

**2.** *In re Froelich,* 838 A.2d 1117, 1120 (Del. 2003) (citations omitted).

**3.** *Id.*

**4.** *Id.* (citations omitted).

- The County's argument ... constitutes *pure sophistry.*
- "The County's own answering brief provides the legal authority to quickly dispense with this *ridiculous argument.*"
- Never one to miss an opportunity to deny a party the right to a fair and impartial hearing on the merits.
- Otherwise the County would be permitted to *appoint a group of monkeys* to the LIRB, and simply *allow the attorney to interpret the grunts and groans of the ape members and reach whatever conclusion the attorney wished* from the documents of record.
- [T]he ... Code cannot be *magically transmuted.*

Third, ODC alleges that the Respondent improperly implied that the Superior Court might rule on a basis other than the merits of the case. In support of this allegation, the ODC relies upon the following passage in the Respondent's reply brief:

This is a typical tactic used by the County, in an effort to prejudice the Court against 395 based on the hope that the Court will decide the matter based upon any potential bias or prejudice that it may have against developer Frank Acierno, rather than on merits.

### Accusations Against Counsel/Inflammatory Characterizations

The Respondent's personal attacks against counsel for the County is similar to the conduct discussed in *Cannon v. Cherry Hill Toyota, Inc.*[5] In that case, the United States District Court for New Jersey found that sanctions were warranted for "unduly inflammatory language in [the attorney's] certifications and briefs,"[6] and for "his repeated use of inflammatory language in his personal attacks on Plaintiff and her attorneys."[7] The court held:

Use of such language does nothing to assist the Court in deciding the merits of a motion, wastes judicial resources by requiring the Court to wade through the superfluous verbiage to decipher the substance of the motion, does not serve the client's interests well, and generally debases the judicial system and the profession.

The Court is aware that a lawyer has an obligation and a duty to represent his client zealously and with diligence. *See* RPC 1.3. However, "[t]he circumstances of this case ... present the unhappy picture of a lawyer who has crossed the boundary of legitimate advocacy into personal recrimination against his adversary."[8]

In this case, we conclude that the Respondent's written statements in his briefs filed with the Superior Court similarly violate Rule 3.5(d).[9] First, the Respondent directly accused a fellow member of the Bar of fabricating the basis of the LIRB's decision. Second, the Respondent engaged in "discourteous conduct that is degrading to a tribunal."

---

5. *Cannon v. Cherry Hill Toyota, Inc.,* 190 F.R.D. 147 (D.N.J.1999).

6. *Id.* at 161.

7. *Id.* at 163.

8. *Id.* at 161–62 (quoting *Thomason v. Norman E. Lehrer, P.C.,* 182 F.R.D. 121, 123 (D.N.J. 1998)).

9. *In re Ramunno,* 625 A.2d 248, 250 (Del. 1993). *See also Paramount Commc'ns, Inc. v. QVC Network Inc.,* 637 A.2d at 52. In *Paramount,* we explained that had Mr. Jamail been a member of the Delaware Bar, or had been admitted *pro hac vice,* he would have been subject to sanctions for violating Rule 3.5(c), which is now Rule 3.5(d).

### Judicial Bias Allegation

The Respondent's briefs also suggested that the Superior Court might rule on a basis other than the merits of the case. We hold that those "unfounded accusations impugning the integrity" of the tribunal violated Rule 3.5(d). In *Peters v. Pine Meadow Ranch Home Ass'n*[10] Court of Utah struck the attorney's briefs from the record and awarded fees to opposing counsel because the briefs were "replete with attacks on the integrity of the court of appeals panel that decided the cases below [and were] unfounded, scandalous, irrelevant to the questions upon which we have granted certiorari, and disrespectful of the judiciary."[11]

In *In re Simon*,[12] the Louisiana Supreme Court sanctioned a lawyer with a six month suspension for the following language:

> Judge Simon (Judge *Ad Hoc*) has committed reversible error in the performance of her duties as Judge *Ad Hoc*. Specifically, Judge Simon utilized the wrong standard (subjective) in deciding this issue. *In denying plaintiff's Motion to Disqualify/Recuse Defense Counsel, Judge Simon has violated not only controlling legal authority but the very principals [sic] (honesty and fundamental fairness) upon which our judicial system is based.* Judge Simon's denial undermines the efficacy of our jurisprudence, attorney ethics and judicial canons and *serves no other purpose but to promote public disrepute and distrust of our legal system.* Indeed, Judge Simon's denial of plaintiff's motion is *base-*

*less and legally, logically and ethically unsound.*[13]

In *In re Wilkins*,[14] the Indiana Supreme Court found the following statement, contained in a brief to the court clearly impugned the integrity of a judge in violation of the Rules of Professional Conduct and were worthy of sanction. The lawyer wrote that, "[t]he [Court of Appeals] Opinion is so *factually and legally inaccurate* that one is left to wonder whether the Court of Appeals was *determined to find for Appellee* Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision)."[15] In that case, the Indiana Supreme Court decided that public reprimand was considered the appropriate sanction in light of several mitigating factors, including the immediate contact and written apology of the attorney, an outstanding and exemplary record, and the fact that the offending language was actually written by out of state co-counsel.

### Judicial Resources Wasted

■ The Respondent's conduct also violated Rule 8.4(d) because it was prejudicial to the administration of justice. The Superior Court, in response to the Respondent's use of offensive and sarcastic language, was required to strike *sua sponte* portions of the Respondent's written arguments and to write an opinion explaining its actions.[16] Thus, the Respondent caused a waste of judicial resources that otherwise would be devoted to the merits of other

---

10. *Peters v. Pine Meadow Ranch Home Ass'n*, 151 P.3d 962, 2007 WL 79231 (Utah 2007).

11. *Id.* 151 P.3d at 967, 2007 WL 79231 at *7.

12. *In re Simon*, 913 So.2d 816 (La.2005).

13. *Id.* at 819 (emphasis added).

14. *In re Wilkins*, 782 N.E.2d 985, 986 (Ind. 2003).

15. *Id.* at 986 (emphasis added).

16. *395 Assocs., LLC v. New Castle County*, 2005 WL 3194566, at *1 (Del.Super.).

cases before the Superior Court. This Court has previously held that disruptive conduct was prejudicial to the administration of justice.[17]

### Delaware Attorney's Oath

The Respondent, like so many before him and so many since, took the following oath upon his admission to the Delaware Bar in 1989:

"I, ..., do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of Delaware; that I will behave myself in the office of an Attorney within the Courts according to the best of my learning and ability and with all good fidelity as well to the Court as to the client; that I will use no falsehood nor delay any person's cause through lucre or malice." [18]

This oath is, in its essential language, the same one taken by Delaware lawyers since colonial days. When the very first Delaware lawyer, Thomas Spry, was admitted to the Bar in 1676, his behavior was of paramount importance. Court records reflect the following:

Upon the petition of Thomas Spry desiring that he might be admitted to plead some people's cases in the court, etc. The worshipful Court have granted him leave so long as the Petitioner Behaves himself well and Carrys himself answerable thereunto.[19]

Thus, the ideal that a Delaware lawyer will "behave ... in the office of an Attorney" is a first principle of the Delaware Bar that dates back a hundred years before the Revolutionary War. Today, that principle remains a fundamental tenet of the American legal profession. As former Chief Justice of the United States, Warren E. Burger, stated: "lawyers who know how to think but have not learned how to behave are a menace and a liability not an asset to the administration of justice ... I suggest the necessity for civility is relevant to lawyers because they are the living exemplars—and thus teachers—everyday in every case and in every court; and their worst conduct will be emulated ... more readily than their best." [20]

### Zealousness Within Boundaries

■ All members of the Delaware Bar are officers of the Court. Although a lawyer has a duty to his or her client, each Delaware lawyer has sworn an oath to practice "with all good fidelity as well to the Court as to the client." This responsibility to the "Court" takes precedence over the interests of the client because officers of the Court are obligated to represent these clients zealously *within* the bounds

---

**17.** *See In re Shearin,* 765 A.2d 930, 939 (Del. 2000) (holding that the filing of a lawsuit in contradiction to a court order was prejudicial to the administration of justice); *Matter of Mekler,* 669 A.2d 655, 667 (Del.1995) (holding that disruptive conduct that wastes judicial resources can constitute a violation of Rule 8.4(d)).

**18.** Supr. Ct. R. 54.

**19.** Randy J. Holland, *Introduction* to *The Delaware Bar in the Twentieth Century* xxi (Helen L. Winslow, et al. eds., 1994).

**20.** D. Hubert, "Competence, Ethics and Civility as the Core of Professionalism: The Role of Bar Associations and the Special Problems of Small Firms and Solo Practitioners," Teaching and Learning Professionalism Symposium proceedings, American Bar Association (1996), at 113 (quoting, Address by Justice Warren E. Burger to the American Law Institute (reported in the National Observer (May 24, 1971))).

of both the positive law and the rules of ethics.[21]

As "officers of the court," lawyers are an integral part of the institutional administration of justice. Adherence to the rule of law keeps America free. Public respect for the rule of law requires the public's trust and confidence that our legal system is administered fairly not only by judges but also by "officers of the court."

■ Civil behavior towards the tribunal and opposing counsel does not compromise an attorney's efforts to diligently and zealously represent his or her clients.[22] "Indeed, it is a mark of professionalism, not weakness, for a lawyer zealously and firmly to protect and pursue a client's legitimate interests by a professional, courteous, and civil attitude toward all persons involved in the litigation process."[23] This Court has frequently quoted the following remarks of Justice Sandra Day O'Connor:

I believe that the justice system cannot function effectively when the professionals charged with administering it cannot even be polite to one another. Stress and frustration drive down productivity and make the process more time-consuming and expensive. Many of the best people get driven away from the field. The profession and the system itself lose esteem in the public's eyes.

\* \* \* \* \* \*

In my view, incivility disserves the client because it wastes time and energy-time that is billed to the client at hundreds of dollars an hour, and energy that is better spent working on the case than working over the opponent.[24]

Justice Brent Dickson of the Indiana Supreme Court has appropriately observed that civil law is not an oxymoron.[25]

In this case, the Board struggled with where to draw the line between conduct that was *merely* unprofessional and conduct that was unethical. As a result, the Board found that although the Respondent's briefs were "obnoxious" and used "unnecessary invective and rhetoric," there were no ethical violations. In this regard, the New Jersey Supreme Court's decision in *In re Vincenti*[26] is instructive:

Under some circumstances it might be difficult to determine precisely the point at which forceful, aggressive trial advocacy crosses the line into the forbidden territory of an ethical violation. But no matter where in the spectrum of courtroom behavior we would draw that line, no matter how indulgent our view of acceptable professional conduct might be, it is inconceivable that the instances of respondent's demeanor that we are called upon to review in these proceedings could ever be countenanced.[27]

As this Court stated more than fifteen years ago, "[s]imply put, insulting conduct

**21.** *Nix v. Whiteside*, 475 U.S. 157, 168, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). *See also* Sandra Day O'Connor, *Professionalism*, 78 Or. L.Rev. 385, 387 (1999).

**22.** *See* Sandra Day O'Connor, *Professionalism*, 78 Or. L.Rev. 385, 387 (1999).

**23.** *Paramount Commc'ns, Inc. v. QVC Network Inc.*, 637 A.2d 34, 54 (Del.1994).

**24.** *See Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 508 (Del.2005). *(citing Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 52 n.

24 (Del.1994)) (quoting Justice Sandra Day O'Connor, Remarks to an American Bar Association Group on "Civil Justice Improvements" (Dec. 14, 1993)).

**25.** *See* Brent E. Dickson and Julia Buntun Jackson, *Renewing Lawyer Civility*, 28 Val. U.L.Rev. 531 (1994).

**26.** *In re Vincenti*, 92 N.J. 591, 458 A.2d 1268 (1983).

**27.** *Id.*

toward opposing counsel, and disparaging a court's integrity are unacceptable by any standard." [28]

Zealous advocacy never requires disruptive, disrespectful, degrading or disparaging rhetoric. The use of such rhetoric crosses the line from acceptable forceful advocacy into unethical conduct that violates the Delaware Lawyers' Rules of Professional Conduct. "Lawyers are not free, like loose cannons, to fire at will upon any target of opportunity which appears on the legal landscape. The practice of law is not and cannot be a free fire zone." [29]

The leading treatise on legal ethics states that "Part 3 of the Model Rules stands as a stern reminder that it is simply not the case that 'anything goes' once a matter reaches a courtroom or other tribunal; even hardball is played according to an exacting set of rules." [30] During his confirmation hearing, the Chief Justice of the United States, John G. Roberts, Jr., also used a baseball analogy: "Judges are like umpires. Umpires don't make the rules; they apply them. The role of an umpire is critical. They make sure everybody plays by the rules." [31] Like umpires, judges must decide which hits by an advocate are fair and which hard hits by an advocate are foul. In this case, the hits in the briefs filed by the Respondent were not only foul but were so far beyond the boundaries of propriety that they were unethical.

### Conclusion

We hold that the appropriate sanction for the Respondent in this matter is a public reprimand. The issuance of this opinion will constitute that action.

**28.** *In re Ramunno*, 625 A.2d 248, 250 (Del. 1993).

**29.** *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 162 (D.N.J.1999).

**30.** 2 Hazard & Hodes, *The Law of Lawyering* (3d ed. 2007 supp.) The Lawyer as Advocate, § 26.3, pp. 26–6 (Aspen Law & Business).

**31.** Transcript of Confirmation Hearing of Chief Justice Roberts (September 12, 2005), available at http://www.asksam.com/ebooks/ JohnRoberts/confirmation_hearing.asp.