756 A.2d 875 (2000)
In the Matter of a Member of the Bar of the Supreme Court of Delaware: Samuel L. GUY, Respondent.
Nos. 329, 1999, 45, 2000.
Supreme Court of Delaware.
Submitted: May 9, 2000.
Decided: June 28, 2000.
Samuel L. Guy, Wilmington, Delaware, respondent pro se.
Mary M. Johnston, Chief Disciplinary Counsel, Office of Disciplinary Counsel, Wilmington, Delaware.
Before WALSH, HOLLAND, and HARTNETT, JJ.
*876 PER CURIAM:
These consolidated matters are before the Court for review and imposition of sanctions following separate proceedings before the Board of Professional Responsibility (the "Board") directed against Samuel L. Guy ("Respondent"). In No. 329, 1999 (Board Case Nos. 20 and 21, 1998), the Board found that Respondent had violated certain of the Delaware Lawyers Rules of Professional Conduct (the "DLRPC") and recommended a sanction of a public reprimand. In No. 45, 2000 (Board Case Nos. 57, 69, and 90, 1996, 3 and 107, 1997), the Board also determined that Respondent had violated certain provisions of the DLRPC, but found him not in violation of certain others. The Board recommended a sanction of six months suspension.
In written objections to the Board's decision in both cases, Respondent did not directly address the Board's findings but claims the Board's actions are "part of the legal systems [sic] systematic harassment" of him. Respondent repeated those claims in argument before this Court, contending, in effect, that he has been discriminated against because of his race and singled out for disciplinary treatment different from that imposed upon other members of the Delaware Bar.
As to the Board's decision in No. 329, 1999, the Office of Disciplinary Counsel (the "ODC") supports the Board's findings as to violations but contends that its sanction recommendation of a public reprimand was made without taking into consideration Respondent's disciplinary record and should not be approved. The ODC contends that, in No. 45, 2000, the Board should have found Respondent to have violated certain additional disciplinary rules and that the Board's recommendation of six months' suspension is inadequate.
We will examine separately the Board's findings in each of these appeals and then consider the issue of sanctions based on the consolidated record. Because the events that form the basis for the Board's *877 action in No. 45, 2000, occurred earlier chronologically than the matters to be considered in No. 329, 1999, we will consider the matters in reverse order:

I. No. 45, 2000
The Board's statement of facts and conclusions of law with respect to the underlying professional conduct are set forth in its report of January 17, 2000, which is quoted in pertinent part as follows:
Board Case No. 57, 1996
In the spring of 1996, Respondent represented a defendant in a criminal matter in the Superior Court of the State of Delaware in and for Sussex County. After the trial of the matter ended with a verdict, several of the former jurors in the matter were personally contacted by a private investigator allegedly acting on behalf of the defendant. After the presiding judge in the matter was made aware of the post-trial juror contacts, he held an office teleconference with counsel in the matter. During that call, he indicated his concern about the possibility that post-trial juror contacts had been made at the direction of Respondent in possible violation of The Delaware Lawyers' Rules of Professional Conduct.
After this matter was reported to the ODC, Respondent was sent a letter by the ODC dated July 29, 1996 informing him that a file had been opened to investigate his conduct in the matter and requesting his written response as to whether any post-trial juror contacts had occurred at his direction or suggestion. The initial letter from the ODC set a response date of August 16, 1996. After neither receiving a request for an extension of time nor having the letter returned as undeliverable, the ODC sent a second inquiry letter on August 30, 1996 by certified mail. That second letter was returned as unclaimed. On September 26, 1996, the ODC sent another inquiry letter by certified mail; the ODC received the certified mail receipt indicating that Respondent had signed for the letter on September 28, 1996 but the ODC never received a response to the letter. On November 18, 1996, the Respondent delivered a letter to the ODC in response to the requests for information.
The members of the Panel found that, based on the evidence submitted, there was clear and convincing evidence of a violation of Rule 8.1(b) of The Delaware Lawyers' Rules of Professional Conduct, which provides that a lawyer shall not knowingly fail to respond to a lawful request for information from a disciplinary authority.
Board Case No. 61, 1996
In July 1996, Respondent represented a criminal defendant in a matter in the Superior Court of the State of Delaware in and for Kent County. On July 9, 1996, the Honorable Henry duPont Ridgely, the presiding judge in the matter, sent a letter to Respondent informing him that although trial had been scheduled to begin in the matter at 9:30 a.m. that day, Respondent had not appeared. The letter directed that Respondent show cause in writing within ten days why sanctions should not be imposed. On July 19, 1996, Respondent sent a responsive letter to Judge Ridgely.1 Included within the July 19 letter were the following two paragraphs:
1 In the response, Respondent asserted that on June 5, 1996, he had a telephone conference with a Court case scheduling employee during which he was told that trial would be held on July 16, 1996.
It has been my experience that given your public statements against me, the case scheduling employee may not be allowed to tell the truth. You have backed yourself into a corner and have no choice but to determine that I missed [court] on July 9, 1996 even though it was not scheduled for that date with me. If you do not do this, you would have to apologize to me for the wrong and harmful statements *878 you made in the newspaper. During my 36 years on earth, I have never observed a white person in a position of power such as yourself apologize to a black person even when they know they are wrong. It is my belief that you made the statement that you made with the intent to do harm. Your position gives you the right to do so. I believe that the statements I read in the newspapers that are alleged to be quotes from you are evidence of the differential treatment afforded black lawyers and show open contempt for me as a black lawyer. You intentionally attempted to drive a wedge between lawyer and client and maybe you were successful. You intentionally tried to discourage other people from having me represent them. Again, you have been given the right to do so.
It would have been pretty interesting if on July 10, 1996 it was determined that I was dead. You ought to re-read your statements with that thought in mind. Once you do this it should be apparent to you that your statements show no regard for me as a human being. That again is your right. If you treat white lawyers this way, it is not racism.
On July 22, 1996, Judge Ridgely issued an order in the case holding that those two paragraphs of the letter "wrongfully and improperly impugn the integrity, fairness and impartiality of this Court" and ordering that "Respondent's undignified and discourteous statements shall be stricken from the record."
The ODC was made aware of the foregoing incident. By letters dated August 1, 1996, August 30, 1996 and September 26, 1996, the ODC advised Respondent that a matter had been opened with respect to his letter to Judge Ridgely and requesting Respondent's written position as to the underlying facts. No response was received to any of the letters within the specified time periods and it was not until November 18, 1996 that Respondent delivered a response letter.
The Panel found that there was clear and convincing evidence of violations of Rule 8.1(b) and Rule 8.2, which provides that a lawyer "shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." In considering whether Respondent's conduct had violated Rule 3.5(c), which prohibits a lawyer from engaging in "undignified or discourteous conduct which is degrading to a tribunal," the Panel noted that the Delaware Supreme Court has not had occasion to address directly the question of whether a letter written by a lawyer can be said to violate that specific Rule. And See Geoffrey C. Hazard, Jr., The Law of Lawyering § 3.5:401 at 660 (1999). The Court did, however, approve a report by the Board in another matter which found a violation of Rule 3.5(c) relating to a letter sent to a judge. In re Guy, Del .Supr., 670 A.2d 1338 (1995). In any event, the Panel did not have to decide the issue, because there was clear and convincing evidence that the letter violated the requirements of Rule 8.2. In reaching this conclusion, the Panel specifically considered Respondent's argument that his rights of free speech entitled him to make those remarks. The Panel concluded that Respondent's status as a member of the Bar of the Supreme Court of the State of Delaware imposes upon him ethical obligations which limit his constitutional free speech rights when he is making statements in his capacity as a lawyer. See e.g., Gentile v. State Bar of Nevada, 501 U.S. 1030, 1081-82, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (O'Connor, J., concurring) ("[l]awyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected *879 speech"); In re Snyder, 472 U.S. 634, 644-45, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) ("[t]he license granted by the court requires members of the bar to conduct themselves in a matter compatible with the role of courts in the administration of justice"); In re Sawyer, 360 U.S. 622, 646, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring) ("[o]bedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech").
Board Case No. 90, 1996
In September 1996, Mr. Royce Brown requested that Charles L. Mitchell, Esquire represent him in post-conviction criminal proceedings in the United States District Court for the District of Delaware. Respondent had formerly represented Mr. Brown in that matter. After his retention by Mr. Brown, Mr. Mitchell contacted Respondent on several occasions in order to obtain the client's case file. Respondent was not responsive to Mr. Mitchell nor cooperative in turning over the file. Thereafter, Mr. Mitchell filed a disciplinary complaint with the ODC. As a result of the delays caused by Respondent's failure to turn over the file and cooperate with new counsel, Mr. Mitchell was forced to request several continuances from the Court in order to submit post-trial motions. In addition, the presiding judge in Mr. Brown's case entered an order indicating that the sentencing hearing had to be rescheduled due to Respondent's failure to share the case file with Mr. Brown's new lawyer. The judge ordered Respondent to produce the case file no later than October 28, 1996 and specifically noted that if Respondent failed to produce the file in a timely manner, he would be sanctioned. Respondent failed to comply with that order on or before October 28, 1996.
Upon receiving the disciplinary complaint, the ODC sent a letter to Respondent advising him that the complaint had been filed and asking for his written response to the allegations that he had violated certain disciplinary rules. Respondent did not respond to the letter by the deadline of October 29, 1996. Having received no response to the first inquiry letter, on November 6, 1996, the ODC sent another letter to Respondent requesting his position on Mr. Mitchells' complaint. Respondent delivered a response to the complaint on November 18, 1996, three days after the deadline for response. The ODC lawyers believed that Respondent's November 18, 1996 response was not fully responsive to the initial inquiry letter and therefore sent an additional letter containing several specific questions in connection with the matter. ODC never received any response to that letter.
Despite the fact that Respondent was provided with sufficient notice of the filing of the petition in Board Case. No. 90, 1996, Respondent neither filed an answer within the time period mandated by the rules nor sought in a timely fashion and obtained an extension of time within which to file an answer. In such a situation, Board on Professional Responsibility Rule 9(d) provides that "[i]n the event the respondent fails to answer within the prescribed time, the charges shall be deemed admitted."2 Accordingly, the Panel treated the factual allegations of the petition in Board Case No. 90, 1996 as admitted. The Panel found that the allegations as so admitted showing clear and convincing evidence of a violation of Rule 8.1(b). The Panel found that the allegations did not establish violations of Rule 1.16(d), 3.2, 3.4(c) and 8.4(d). For example, the Panel noted that there was no allegation that the presiding judge in Mr. Brown's case in fact entered any sanctions against Respondent for his conduct.
2 As a result of these deemed admissions, the ODC presented argument at the hearing on the subject of sanctions.

*880 Board Case No. 3, 1997

In June 1995, Respondent filed an action on his own behalf in the United States District Court for the District of Delaware alleging employment discrimination. On December 10, 1996, the Honorable Joseph J. Longobardi, the presiding judge in that case, issued an opinion dismissing the case based upon Respondent's failure to prosecute, repeated failure to comply with the Court's orders and for "consistently and wilfully" ignoring the deadlines imposed by the Court. In the opinion, Judge Longobardi concluded that Respondent was "personally and fully responsible for a willful and consistent pattern of dilatoriness" and that Respondent's conduct had "consumed resources that could have been much better spent on reaching the merits of this dispute." The opinion also provided that Respondent's "deliberate pattern of reckless disregard for the orders and rules of Court compels the ultimate sanction of dismissal."
Upon learning about the opinion, the ODC sent a letter to Respondent dated January 6, 1997 informing him that a disciplinary file had been opened concerning the matter and requesting Respondent's specific written position with respect to the Court's findings in the opinion as to his conduct. Respondent never replied to that initial inquiry letter nor to a letter which was sent on February 28, 1997, again asking for his response with respect to the same issues. Respondent never replied to the petition filed with the Board, nor did he request any extension of time to respond to the petition. As a result, the Panel concluded that the factual allegations of the petition were deemed admitted pursuant to Board Rule 9(d). The Panel found that those admissions provided clear and convincing evidence of violations of Rule 3.2 (failure to expedite litigation), 3.4(c) (disregard for obligations and rules of a tribunal) and 8.1(b). The Panel concluded that the evidence did not establish violations of Rule 3.5(c) or 8.4(d).
Board Case No. 107, 1997
The ODC alleges that in June of 1997, Respondent was retained on behalf of Mr. Amin Guy to represent him in a criminal matter in the Superior Court of the State of Delaware in and for New Castle County. The ODC alleges that Respondent was paid $1000 in cash as a retainer for his legal services. The ODC alleges that Respondent informed Mr. Amin Guy and his family that trial had been scheduled in the matter for August 12, 1997. The ODC alleges that although Respondent entered his appearance on behalf of Mr. Amin Guy, the family was unable thereafter to receive any response to their requests to Respondent for information about the status of the case. After Respondent received discovery materials from the Attorney General's office on August 1, 1997, Respondent sought a continuance of the trial. That request was denied. The ODC asserts that on August 12, 1997, the members of Mr. Amin Guy's family went to Superior Court for the trial, although they had not been able to speak with Respondent about the case. The ODC alleges that Respondent arrived in the courtroom and stated that he was ill, would not be able to go forward and was seeking to withdraw. The ODC alleges that Respondent then indicated to the family members that he would return the cash retainer and that Mr. Amin Guy should contact the Public Defender's Office in order to secure representation. The ODC asserts that after the family repeatedly called Respondent to obtain a return of the retainer, and did not receive those funds, a disciplinary complaint was filed with the ODC.
The ODC sent two letters to Respondent advising him of the docketing of the complaint and requesting that he provide his written position on the specific allegations of the complaint. The ODC never received any response to either of these letters. Based upon these alleged facts, the ODC filed a petition with the *881 Board alleging violations of Rule 1.2(a), 1.3, 1.4(a), 1.16(d), 8.1(b) and 8.4(d). At the hearing, however, the complainants did not appear and the ODC submitted only documentary evidence and testimony from the ODC employee who handles outgoing and incoming mail for the office. Based upon the evidence submitted, the Panel concluded that there was clear and convincing evidence of a violation of Rule 8.1(b) (failure to respond to lawful requests for information by disciplinary authority). However, the Panel concluded that the evidence presented did not establish any of the other rule violations asserted in the case.
In sum, the Board found that Respondent failed to respond timely to inquiries from the Court and from the ODC regarding claims of unprofessional conduct in five instances. In Board Case No. 57, the ODC sent a letter to the Respondent on July 29, 1996, concerning a claim of post-trial jury contact in Sussex County. Despite the request for an immediate response, Respondent did not reply for more than three months.
In Board Case No. 61, upon being directed to explain to the Superior Court his failure to appear for trial in Kent County, Respondent replied with a discourteous letter reflecting on the integrity of the trial judge. Respondent delayed for many weeks his response to the ODC inquiry into his conduct.
In Board Case No. 90, the ODC sent a letter to Respondent, advising him that a complaint had been filed against him regarding his refusal to turn over a former client's case file to that client's new attorney and requesting a written response. Respondent ignored that request, responded late and in an unresponsive manner to a second request, and never responded at all to an additional request that Respondent provide more detailed information.
In Board Case No. 3, the ODC sent a letter to Respondent, informing him that a disciplinary file had been opened concerning his failure to comply with court orders and meet deadlines in an action filed by Respondent on his own behalf in the United States District Court for the District of Delaware alleging employment discrimination. This letter, which requested a written response, was never replied to, nor did Respondent reply to second letter from the ODC seeking his response with respect to the same issues.
In Board Case No. 107, the Board concluded that there was insufficient evidence to support the claim that Respondent neglected to act with diligence and communicate with his client, Amin Guy. But the record is clear that Respondent failed to respond to two separate written inquiries from the ODC. Again, Respondent has tendered no satisfactory explanation for ignoring the legitimate inquiries of the ODC.
Rule 8.1(b) of the DLRPC requires a lawyer to "respond to a lawful demand for information from ... disciplinary authority" in connection with a disciplinary matter.[1] Such cooperation is essential to the efficient operation of the lawyer disciplinary process. Neither before the Board nor in this Court has Respondent provided an explanation for his dilatory conduct which significantly delayed the disposition of the complaints against him. Moreover, as the Board notes, in his response to the inquiry from President Judge Ridgely, Respondent's right to free speech did not supercede his ethical obligation as a member of the Bar under Rule 8.2.
*882 We are satisfied that the record in this matter fully supports the finding of the Board that, in five instances, Respondent violated Rule 8.1(b) and, in one instance, Rule 8.2. Accordingly, we accept the Findings of the Board.

II. Case No. 329, 1999
The Board made the following findings:
A. Board Case No. 20, 1998

* * * * * *
The ODC presented the testimony of Mr. Mark Gatewood. Mr. Gatewood presently is incarcerated in the Delaware Department of Corrections facility in Smyrna, Delaware. Mr. Gatewood had retained the Respondent in April of 1997 to represent him in a serious criminal matter involving drug trafficking offenses, and had paid the Respondent a retainer in the amount of $3,500. Although trial was scheduled to begin May 20, 1997, the Respondent advised Mr. Gatewood that a continuance would not be necessary. The Respondent stated that it was a "small case" and that he could "handle this."
Mr. Gatewood asserted that he provided the Respondent with the names of four witnesses who might be able to provide testimony in his defense. The Respondent failed to contact or to interview any of the witnesses. Although Mr. Gatewood, and others, claimed that they attempted on numerous occasions to contact the Respondent, by telephone and by letter, the Respondent failed to return any phone calls or to otherwise communicate with his client or with individuals attempting to obtain information on Mr. Gatewood's behalf. Respondent also failed to assist Mr. Gatewood in his request that he appear during trial in street clothes instead of in prison attire.
The ODC and Mr. Gatewood also asserted that, immediately prior to trial, the prosecution offered Mr. Gatewood a plea bargain. If Mr. Gatewood had accepted the plea, he would have served a period of incarceration of between seven and eight years. At no time did the Respondent inform Mr. Gatewood that if he did not accept the plea and was found guilty following trial, he would likely serve a thirty-year minimum mandatory sentence. Instead, the Respondent advised Mr. Gatewood not to accept the plea since it would be the same as serving a ten-year mandatory sentence which Mr. Gatewood understood at that time to be the maximum sentence he would have faced upon conviction. At the time the Respondent advised his client [not] to accept the plea, the Respondent was aware that the motion to suppress the evidence had been denied and that the evidence against Mr. Gatewood was substantial.
When Mr. Gatewood appeared for trial, he was surprised to see that no witnesses were present. For the first time, the Respondent stated that he did not think that witnesses would be needed. Mr. Gatewood testified that, to the best of his knowledge, the Respondent did nothing to prepare for his defense. Mr. Gatewood was found guilty on all counts.
The sentencing was scheduled for September 19, 1997. Between the conclusion of trial and September 19, 1997, the Respondent again failed to respond to numerous attempts to contact him by Gatewood, his family, and his finance, both by telephone and by letter. Mr. Gatewood testified:
But Mr. Guy, he totally abandoned me. He  I  trusted Mr. Guy. I put my life in his hand and he just hurt me because I thought Mr. Guy was going to  I thought he was going to do something for me, you know. And he just took my money and just left me. That's the end of the  he just left me. I was totally abandoned by Mr. Guy. He hurt me deeply.
Mr. Gatewood testified that on one occasion, Mr. Gatewood, who was then incarcerated, managed to reach the Respondent *883 by telephone. When the Respondent realized it was Mr. Gatewood, the Respondent hung up the telephone.
Without any communication with his client or notice to the Superior Court, the Respondent failed to appear for the sentencing hearing on September 19, 1977. The sentencing hearing was rescheduled for October 31, 1997 and the Superior Court confirmed the Respondent's continuing obligation to represent Mr. Gatewood. Mr. Gatewood wrote a letter to the Delaware Supreme Court expressing his concern over the Respondent's failure to appear on his behalf. The Clerk of the Supreme Court responded to Mr. Gatewood's letter, with a copy to the Respondent.
The Respondent again failed to communicate with his client until the evening before his rescheduled sentencing. Mr. Gatewood was sentenced to thirty-years minimum mandatory incarceration. The Respondent also failed to meet with his client in jail, as he had promised immediately following sentencing. After sentencing, the Respondent continued the pattern of complete lack of communication with his client, despite numerous attempts to communicate by Mr. Gatewood and by his family, fiancee, friends and boss on his behalf by telephone and by letter.
Mr. Gatewood became understandably concerned that the Respondent was not protecting his appellate rights. A notice of appeal was due to be filed by November 30, 1997. The Supreme Court received a letter from Mr. Gatewood on November 24, 1997, which it accepted as his pro se notice of appeal. But for Mr. Gatewood's actions without the benefit of legal counsel, the appeal deadline would have passed and the Supreme Court would have had no jurisdiction to hear the appeal,
The Supreme Court's November 24, 1997 letter also required a response from the Respondent by December 4, 1997. The Respondent failed to comply with the Supreme Court's directive. Mr. Gatewood again wrote a letter to the Supreme Court dated December 5, 1997, expressing concerns with the Respondent's conduct. By letter dated December 12, 1997, the Supreme Court confirmed that for purposes of the appeal, the Respondent remained Mr. Gatewood's attorney. Although the Respondent eventually filed a belated notice of appeal on December 11, 1997, the Respondent's failure to comply with the requirements of the Court's rules necessitated another letter from the Supreme Court dated December 17, 1997, directing a response by December 24, 1997. The Respondent did not file anything with the Court until January 2, 1998.
The ODC received a formal complaint from Mr. Gatewood and sent a copy of the complaint to the Respondent requesting his response by January 28, 1998. By letter dated January 22, 1998, the Respondent stated in full:
I represented Mr. Gatewood in the case that forms the basis for his complaint. He was in agreement with the manner in which the case was handled until he was found guilty.
Because this letter did not constitute a complete response as requested by the ODC, the ODC wrote another letter to the Respondent, dated March 10, 1998, setting forth seven detailed requests for information. The Respondent's response was due by March 30, 1998. The ODC's letter was not returned to the ODC as undelivered or otherwise unclaimed. The Respondent did not request an extension of time within which to respond. No response to this letter or other responsive information has ever been received by the ODC.
* * * * * *
The panel has concluded that the Respondent has violated the Delaware Lawyers' Rules of Professional Conduct in a number of ways. The violations fall into three categories:

*884 First, the panel is of the view that the failure of the Respondent to interview witnesses identified by Mr. Gatewood, and to even inquire of those witnesses as to whether or not they possessed information which might be of use in Mr. Gatewood's defense, was a violation of Rules 1.1 and 1.2(a). Although the Respondent provided a number of explanations at the hearing for his conclusion that the witnesses were not likely to have possessed useful information, the failure to even inquire of those witnesses about their knowledge unnecessarily risked the possibility that useful information might be lost. Conversely, negative information from the witnesses might also have been useful in advising Mr. Gatewood on whether to accept a plea. The Respondent may have been correct in his view that the purported witnesses did not possess useful information. However, only the inquiry  which had been specifically requested by his client  would have resolved the question. This problem was compounded by the fact that Mr. Gatewood had apparently been emphatic in requesting that the witnesses be contacted and interviewed.
Secondly, the [panel] is of the view that the Respondent's failure to communicate with Mr. Gatewood with respect to his appeal, or to file a timely appeal, was in violation of Rule 1.3 and Rule 1.4(a). Mr. Gatewood had every right to expect that he would be promptly contacted by his attorney for purposes of preparing an appeal. When that did not happen, Mr. Gatewood attempted to act on his own behalf. The circumstances described by Mr. Gatewood in this context were inconsistent with Respondent's duty of diligence as well as the duty to keep the client reasonably informed.
Third, the Respondent's failure to respond fully to the ODC's January 7, 1998 letter and failure to respond at all to the ODC's March 10, 1998 letter were in violation of Rule 8.1(b). The panel is of the view that the attitude expressed by the Respondent, can, at best, be characterized as uncooperative. This was not inconsistent with his failure to participate in the June 3 hearing or to file an answering brief as requested by the panel. Similarly, the refusal of the Respondent to respond to the directive of the Supreme Court's assistant clerk that he acknowledge the continuing obligation to represent Mr. Gatewood by a specified date would appear to violate Rule 3.4(c).
The panel is of the view that the balance of the allegations in the petition in Board Case No. 20 fail for lack of proof. For example, the panel is not satisfied, based upon the Respondent's testimony or the testimony of Mr. Gatewood, that Mr. Gatewood was unaware of his potential sentencing exposure if he went to trial. The Respondent testified that he told Mr. Gatewood what he was facing, and the panel was not satisfied, for purposes of this disciplinary proceeding, that Mr. Gatewood's testimony to the contrary was persuasive.
With respect to Respondent's failure to appear at the sentencing hearing, the Respondent's testimony was somewhat confused. Respondent indicated that he was in the court house building at the time of the hearing and was aware of the hearing. Confusion apparently arose, however, with respect to statements made by opposing counsel as to whether or not Respondent was still practicing criminal law. Although, failure to actually appear at the hearing was improper, the panel was not satisfied that this one incident rose to the level of a disciplinary rule violation, particularly in light of the fact that it did not result in any prejudice under the circumstances to Mr. Gatewood.
The ODC's allegations with respect to two directives from the Supreme Court, raise a number of serious concerns. Nevertheless, it is not sufficiently clear that the correspondence, which actually *885 came from the court clerk, actually required any response to the Court or to the clerk.
With respect to the remaining allegation of the petition, the panel was unable to reach a conclusion that the level of proof by the ODC was sufficient to support a find that additional violations of the Disciplinary Rules have occurred.
Board Case No. 21
The Board summarized the ODC's contentions with respect to Board Case No. 21 as follows:
In March of 1997, Mr. Joseph Burton paid the Respondent a retainer in the amount of $1,500 to represent him in a criminal matter. The trial was originally scheduled for July of 1997, but was postponed for lack of a courtroom. Between July 1997 and the rescheduled trial date, October 2, 1997, Mr. Burton repeatedly attempted to contact the Respondent. The Respondent failed to return numerous telephone calls from Mr. Burton. Mr. Burton further attempted to contact the Respondent by leaving notes on the door of his residence. Mr. Burton began waiting for the Respondent, a member of the City Council, during City Council meetings. After a wait as long as three hours, the Respondent hurriedly acknowledged Mr. Burton, promised to get in touch with him, and then failed to do so. Following the first day of trial, Mr. Burton and the Respondent had a brief conversation about he case strategy on the premises of City Council, but were interrupted by others and Mr. Burton was concerned that the confidentiality of the attorney/client relationship was being breached.
To the best of Mr. Burton's knowledge, the Respondent did nothing to prepare for his client's defense. The Respondent failed to contact Mr. Burton's former counsel, who had information which could have assisted in the defense. Mr. Burton provided the Respondent with the names of witnesses who had information. Specifically, the charges were based upon a workplace incident. The internal affairs department of Mr. Burton's employer had conducted an investigation, including taped interviews of Mr. Burton's accusers. These tapes contained information which contradicted the accusers' subsequent statements and could have been used for impeachment. Additionally, the internal affairs investigation had been conducted by a person who was biased against Mr. Burton on the basis that he previously had complained to his employer concerning her inappropriate behavior.
The Respondent failed to contact or interview any witnesses on Mr. Burton's behalf prior to trial. The Respondent first met Mr. Burton's witnesses immediately prior to trial.
The Respondent failed to request a mistrial when a juror was dismissed by the judge for writing a note stating that he did not like the way the Respondent was questioning the witnesses and the way he was handling the case. A second opportunity for a mistrial motion was ignored by the Respondent when several jurors asked the bailiff about second or third-degree charges.
Mr. Burton was found guilty of all charges. When the judge suggested changing the terms of Mr. Burton's bail, the Respondent failed to say anything on his client's behalf. Instead, the prosecutor informed the court that Mr. Burton's bail should not be increased.
The sentencing hearing was scheduled for January 22, 1998. Without notice to Mr. Burton or to the Superior Court, the Respondent failed to appear at the sentencing hearing. The Respondent had filed no motion to withdraw as counsel.
Mr. Burton filed a complaint with the ODC dated December 11, 1997. The ODC sent the Respondent a letter dated December 16, 1997 enclosing the complaint and requesting a response by January *886 6, 1998. This letter was not returned to the ODC as undelivered or otherwise unclaimed. By letter dated January 15, 1998, the ODC reminded the Respondent that his response was overdue. By letter dated January 22, 1998, the Respondent stated in full:
I represented Mr. Burton in the case that forms the basis for his complaint. He was in agreement with the manner in which his case was handled until he was found guilty.
Because this letter did not constitute a complete response as requested by the ODC, the ODC wrote another letter to the Respondent, dated March 10, 1998, setting forth five detailed requests for information. The Respondent's response was due by March 30, 1998. The ODC's letter was not returned to the ODC as undelivered or otherwise unclaimed. The Respondent did not request an extension of the time within which to respond. No response to this letter or other responsive information has ever been received by the ODC.
* * * * * *
The Board concluded as follows:
[w]ith one exception, the testimony and documentary evidence offered by the ODC support the conclusion that the Respondent has violated the Rules cited by the ODC in its brief. Mr. Burton was a credible witness whose testimony was reasonably specific and detailed. For example, unlike the witness in the prior Board Case, who relied in part upon unnamed friends and family members who had been purportedly unsuccessful in contacting the Respondent, Mr. Burton testified more fully with respect to his own unsuccessful attempts to contact the Respondent. These included attempts to reach the Respondent by telephone, by leaving notices on the door of his residence, and by waiting for the Respondent at City Council Meetings.
As in the prior Board Case, the failure to interview witnesses and otherwise conduct an investigation would appear to violate Rules 1.1 and 1.2(a). The Respondent's failure to appear at the sentencing hearing is totally unexplained, even in the manner proffered in the earlier Board Case. In addition, the Respondent's failure to respond fully to the ODC's letters would appear to be a violation of Rule 8.1(b).
Each of the other contentions raised by the ODC would also appear to be supported by the record. The one exception, however, relates to the claim that the Respondent failed to request a mistrial. The panel was of the view that this contention was not sufficiently supported by legal authority.
Needless to say, the panel would have appreciated the opportunity hear the Respondent's view with respect to each of these matters, both in the form of testimony as well as in a post-hearing brief. It is unfortunate that the Respondent chose not to participate in the proceedings.
As the Board noted, Respondent's refusal to participate in the second day of hearings denied the panel the benefit of Respondent's full explanation of his position. Respondent claims to have had a problem with his vision but submitted no medical documentation in support of that claim. Moreover, the panel offered Respondent the opportunity to file a post-hearing brief but he declined to do so.
With respect to the issue of sanctions, the Board noted that "the record is somewhat undeveloped with respect to any mitigating factors which might exist," again because of Respondent's "unwillingness to fully participate in the proceedings." Similarly, the Board lacked knowledge of Respondent's disciplinary record because the ODC did not present that material due to Respondent's absence. Nonetheless, the panel recommended a public reprimand as to each of the cases heard.
The ODC argues that the Board's findings are fully supported by the evidence. *887 In his written submission to this Court, Respondent has chosen to attack the integrity of the Board rather than provide argument directed against the Board's findings. In our view, the record fully justifies the Board's findings that Respondent failed to provide competent representation on behalf of Mr. Gatewood in violation of DLRCP 1.1 and 1.2(a).[2] We also find full record support for the Board's finding of repeated violations of Rule 8.1(b) in the Respondent's failure to respond fully to inquiries from the ODC and communications from the Clerk of this Court. The Board correctly noted that Respondent's attitude in dealing with the ODC is "at best ... uncooperative."

III. Sanctions
In fixing an appropriate sanction, the Board, or ultimately this Court, must bear in mind that the primary purpose of disciplinary proceedings is to protect the public as well as to foster public confidence in the Bar. Equally deserving of consideration is the preservation of the integrity of the profession and deterrence of similar misconduct by other members of the profession. See In re Agostini, Del.Supr., 632 A.2d 80, 81 (1993). In the imposition of lawyer discipline, this Court should consider the range of sanctions imposed in comparable instances of lawyer misconduct and any mitigating or aggravating circumstances, particularly the lawyer's disciplinary record.
Respondent's disciplinary record, even apart from the multiple violations determined here, is substantial. In May 1994, he was publicly reprimanded for failure to appear in the Family Court and being found in criminal contempt for his conduct in a Superior Court trial. In November 1994, Respondent was again publicly reprimanded for failure to respond to ODC requests for information, conduct which the Board found was part of a pattern of unresponsiveness. In September 1995, Respondent received his third public reprimand for a discourteous communication to the Chief Justice, attacking the integrity of this Court. In addition to his public reprimands, the Respondent has received two private admonitions, one in 1993 and another in 1995.
Perhaps the most disturbing aspect of Respondent's disciplinary experience has been his unwillingness to acknowledge any responsibility for his actions. It has been his contention that his disciplinary problems are the result of a racially biased system, not his own conduct. To the extent that remorse or acknowledgment of wrongdoing is a mitigating factor in the assessment of sanctions, Respondent's attitude gives little hope for a change in behavior.
The Court has established a pattern of increasing the gradations of sanctions based on a lawyer's disciplinary record. See In re Tos, Del.Supr., 576 A.2d 607 (1990) (one year suspension following two private admonitions and a public reprimand); In re Mekler, Del.Supr., 669 A.2d 655 (1995) (one year suspension following five private censures and three public reprimands); In re McCann, Del.Supr., 669 A.2d 49 (1995) (one year suspension following one private admonition and one public reprimand). Recently, this Court imposed a one year suspension on a lawyer with an extensive disciplinary record who engaged *888 in additional violations while on probation. See In re Benge, Del.Supr., 754 A.2d 871 (2000).
McCann is particularly instructive when compared with the present case. In McCann, this Court noted as aggravating factors the respondent's previous sanctions and "multiple violations on this record." Despite the mitigating factors of medical problems, efforts to rectify the consequences of his misconduct, his remorse and cooperation with the ODC, the McCann Court nonetheless imposed a one-year suspension. While McCann involved an element of dishonesty that is lacking in this case, Respondent's complete lack of appreciation for the need to conform his conduct with that expected of all other members of the Delaware Bar renders his situation equally aggravating.
We are also concerned about Respondent's lack of timely responses to written inquiries from the ODC. It appears that the ODC has been required to use certified mail with return receipts requested to established notice to Respondent, despite the requirement that each member of the Bar, as part of the annual registration statement under Rule 69(b), designate both a residence and office address. The purpose of this provision, and one further requirement under Rule 9(g) that a lawyer notify the Clerk of this Court within 30 days of any change in the registration information, is to afford public notice of addresses at which a lawyer may receive communication from, among others, the regulatory arms of this Court. Respondent's multiple violations of Rule 8.1 show a pattern of delayed and non-responsive replies to inquiries from the ODC, resulting, in large part, from his failure to reply to mail sent to him at the address listed on his registration form.
Accordingly, THE JUDGMENT OF THIS COURT IS AS FOLLOWS:
(1) Respondent shall be prohibited and suspended from engaging in the practice of law for a period of seven months beginning July 1, 2000 and ending upon his reinstatement for which applications may be made after January 31, 2001.
(2) During the suspension, Respondent shall conduct no act directly or indirectly constituting the practice of law, including the sharing or receipt of any legal fees.
(3) Respondent shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.
(4) Respondent shall arrange with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension and submit to this Court on or before August 1, 2000, a certification of compliance with this paragraph, co-signed by the attorney who has undertaken the said arrangement.
(5) Upon his reinstatement, Respondent shall file with this Court a designation of address for the receipt of first class mail from clients, the courts and the ODC. In the absence of proof to the contrary tendered by Respondent, Respondent shall be deemed to have received all mail sent to that address, postage prepaid. In particular, Respondent shall promptly respond to all future inquiries from the ODC. In the event he fails to do so, the ODC may proceed to institute disciplinary proceedings based on a violation of the condition of reinstatement.
NOTES
[1] Rule 8.1. Bar admission and disciplinary matters.

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawyer demand for information from an admission or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.
[2] Rule 1.1 Competence.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Rule 1.2. Scope of representation.
(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.