765 A.2d 930 (2000)
In the Matter of a Member of the Bar of the Supreme Court of Delaware, K. Kay SHEARIN, Respondent.
No. 178, 2000.
Supreme Court of Delaware.
Submitted: December 5, 2000.
Decided: December 22, 2000.
Joseph M. Bernstein, Wilmington, Delaware, for respondent.
Mary Susan Much, Office of Disciplinary Counsel, Wilmington, Delaware.
Before: WALSH, HOLLAND and BERGER, Justices.
*931 PER CURIAM:
This case comes before the Court pursuant to Rule 9(e) of the Rules of the Board on Professional Responsibility. The Respondent, K. Kay Shearin, a member of the Delaware Bar, seeks review of a report *932 issued by the Board on Professional Responsibility ("Report"). In the Report, the Board found that Shearin had violated several rules of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC") and recommended that Shearin be suspended for a period of three years pursuant to Board Rule 8(a)(2).
Shearin filed a timely objection to the Board's Report and its recommendation. Shearin has raised three issues on appeal. First, she contends that the Office of Disciplinary Counsel failed to establish that she violated the DLRPC as alleged in the Petition for Discipline ("Petition"). Second, she argues that the Board's findings of fact are not supported by substantial evidence. Third, she submits that the sanction of a three-year suspension recommended by the Board should be rejected in favor of a reprimand.
We have concluded that the violations found by the Board are supported by competent admissible evidence. Nevertheless, we have concluded that the sanction recommended by the Board needs to be addressed further by the parties before a final determination is made by this Court.

STATEMENT OF FACTS[1]

Events Leading to Disciplinary Charges
On September 1, 1998, the Office of Disciplinary Counsel ("ODC") filed a Petition for Discipline against Shearin. The Petition alleged six violations of the DLRPC by Shearin. The events which led to the ODC's charges against Shearin arose from Shearin's role in litigation, which commenced in 1991, concerning the ownership and governance of certain church properties located in Wilmington, Delaware and elsewhere. The parties involved in that litigation were the Mother African Union First Colored Methodist Protestant Church ("Mother Congregation"), the Conference of African Union First Colored Methodist Protestant Church ("AUMP Church"), and its President Prelate, Delbert L. Jackson ("Bishop Jackson").[2] Shearin was the attorney for the Conference and Bishop Jackson in that litigation.
That litigation resulted in the entry of a final judgment ("Final Judgment") on February 24, 1993 which denied the claims of Shearin's clients, the AUMP Church and Bishop Jackson, and upheld the claims of the plaintiff, the Mother Congregation and its members. The Court of Chancery held that the church properties in question belonged to the Mother Congregation, its Trustees and its members. The Court of Chancery issued a final injunction restraining the AUMP Church from interfering with the use and enjoyment of the properties by the Mother Congregation and its members and also invalidated a deed that purported to transfer the church properties from the Mother Congregation to the AUMP Church. The Court of Chancery's Order also imposed sanctions on Shearin under Chancery Court Rule 11 and ordered her to pay $459.00 to the plaintiffs' attorneys.
On July 13, 1995, the Court of Chancery entered an Order finding Shearin in civil contempt of court for violating the terms of the Final Judgment. The Court of Chancery transmitted its Memorandum Opinion and Order to the ODC for it to "consider appropriate disciplinary measures against Ms. Shearin, whose pattern of behavior in this case raises serious questions as to her willingness to abide by the standards of conduct expected of attorneys who practice before this Court." On September 22, 1995, the Court of Chancery entered an Order finding Shearin in civil contempt for conduct that the Court *933 found to be in violation of the Court's July 13, 1995 Order. The Court's Order also directed that a copy of the Order be transmitted to ODC "to take such disciplinary action against [Shearin] as it deems appropriate." These two referrals to ODC led to the initiation of three separate disciplinary proceedings against Shearin, which resulted in the imposition of a one-year suspension from the practice of law.[3]
The pending ODC Petition arose from a lawsuit filed by Shearin, pro se, and Bishop Jackson on February 26, 1997 in the U.S. District Court for the District of Columbia (the "Shearin Lawsuit"). The claims asserted in the Shearin Lawsuit were brought under the federal civil rights laws, 42 U.S.C. §§ 1983 and 1985 and sought monetary damages as well as injunctive relief. The named defendants included individual trustees of the Mother Congregation, attorneys who had represented the Mother Congregation, several Superior Court Judges, two Vice-Chancellors, most current and former Justices of the Delaware Supreme Court, some U.S. District Court judges and judges of the Third Circuit Court of Appeals, one attorney employed by the ODC, and a United States Senator.
In the complaint, Bishop Jackson alleged that defendant Jarman had conspired with other named defendants to "break up the AUMP Church" and to "take its church buildings and land away from it." Bishop Jackson also alleged that various named defendants had engaged in a conspiracy to deprive Jackson and the AUMP Church members of church properties (hereinafter "Jackson Claims").
In claims that were unrelated to Bishop Jackson's claims concerning the church and its properties, Shearin alleged that one defendant, then a United States District Court Judge: unlawfully refused to authorize payments to Shearin for services she had rendered as a court-appointed attorney under the Criminal Justice Act, 18 U.S.C. § 3006A; had induced other federal judges in the District of Delaware to do the same; had caused Shearin's name to be removed from the panel of attorneys who were eligible for CJA appointments in Delaware; and had unlawfully induced other Delaware District Court judges to dismiss all the cases in which Shearin was involved as an attorney for the plaintiff. Shearin alleged that the judge in the Court of Chancery proceedings "suffered a progressive mental disability" which caused him to "exhibit mood swings and injudicious conduct, including hostility to litigants and court personnel." Shearin also alleged that the same jurist "had induced other Delaware judges to ratify his rulings in the AUMP church cases, even when those rulings were contrary to the evidence before the courts and to the controlling law." Lastly, Shearin alleged that several of the named defendants had "defamed" Shearin in various publications and legal proceedings.
In a Memorandum Opinion and Order dated January 27, 1998, all of the claims set forth in the Shearin Lawsuit were dismissed for lack of subject matter jurisdiction under the Rooker-Feldman doctrine.[4] In dismissing the claims concerning the AUMP Church and its properties, the federal trial judge in the District of Columbia stated:
A review of the relief sought by plaintiffs demonstrates that in effect plaintiffs seek the same relief they were unable to obtain in the prior lawsuits ... the court concludes that the plaintiffs *934 underlying constitutional claims are "inextricably intertwined" with the previous state court judgments. This case presents allegations already entertained and decided in various state court actions... The relief plaintiffs seek is precisely what the Rooker-Feldman doctrine bars. Accordingly, this court lack subject matter jurisdiction over such claims ...
The court also dismissed Shearin's claims against the defendant, Delaware District Court Judge stating:
They are, for the reasons already stated, without merit and shamefully frivolous. Indeed the record in this case suggests that bringing these claims represents a pattern and course of conduct worthy of consideration for action by the State of Delaware Bar Disciplinary Counsel.

Board Proceedings
The Petition filed by ODC alleged six separate violations of the DLRPC by Shearin. All of the alleged violations arose from the "filing of the Shearin suit in Federal District Court." A hearing before the Board was held on December 19, 1999. Shearin appeared pro se.
This hearing had been originally scheduled for June 16, 1999. It was continued until September 22, 1999 to give Shearin time to obtain an attorney. The September 22, 1999 hearing was again continued when questions about the Board's composition were raised by Shearin and subpoenas were outstanding.
Prior to the December 19 hearing before the Board, at Shearin's request, the Board had issued subpoenas to a former ODC attorney, a Vice-Chancellor and the Federal District Court Judge in the District of Columbia who had dismissed Shearin's claims. ODC moved to quash the subpoenas. The Board granted ODC's motion and ruled that "the testimony and documents [that Shearin] seeks to introduce at the hearing are irrelevant to the proceedings before the Board." At the outset of the hearing, Shearin also moved to disqualify one of the Board members. That motion was denied by the Board.
When the Board hearing began, ODC requested that all the allegations set forth in the Petition for Discipline filed on September 1, 1998 be "deemed admitted." Board Rule 9(d) states that Respondent had twenty days after service of the petition to file an answer and to serve it on the ODC or charges shall be deemed admitted. Service was made on Shearin on September 2, 1998. No answer was filed within the twenty-day period.
A previous Chair of the Board had extended the time for Shearin to answer the Petition until December 22, 1998. Shearin failed to file an answer on the extended date, stating it was done to preserve her "right to counsel" argument. Although the Board concluded that Shearin's "right to counsel" argument had no merit, it denied ODC's request to deem that Shearin had admitted the allegations in its Petition by failing to file an answer.
This Court understands the Board's desire to accommodate the Respondent in this case since she appeared pro se. In the future, however, the Board's procedural rules should be enforced. Rule 9(d)(2) provides "in the event the respondent fails to answer within the prescribed time, all of the allegations and charges in the petition shall be deemed admitted, such that the sole remaining issue to be determined by the Board shall be the appropriate disciplinary action."

Board Hearing
At the Board hearing, the attorney for ODC did not present any witnesses to support the allegations in the Petition. Rather, ODC introduced certain documents into evidence and argued that those documents established the alleged violations. The documents were the Petition for Discipline with four exhibits and thirteen ODC exhibits in bound form as follows:

*935 ODC EXHIBIT 1  Verified Complaint, Jackson, et al. v. Jarman, et al., Civil Action No. 97cv0429(RMU).
ODC EXHIBIT 2  Memorandum Opinion of the Court of Chancery of the State of Delaware in and for New Castle County, Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union first Colored Methodist Protestant Church, Del.Ch., C.A. No. 12055, 1992 WL 83518, (V.C.Jacobs), dated April 22, 1992 (Mem.Op.)
ODC EXHIBIT 3  Superseding Final Order and Judgment, C.A. No. 12055, (V.C. Jacobs) dated February 24, 1993 based on Memo Op. 4/22/92.
ODC EXHIBIT 4  Memorandum Opinion and Order Voiding Deed, Adjudication Contempt, and Imposing Sanctions (C.A. No. 12055), and Order dismissing C.A. 1674, 1995 WL 420003 (V.C.Jacobs), dated July 13, 1995.
ODC EXHIBIT 5  Contempt Order, C.A. No. 12055 (V.C. Jacobs), dated September 2, 1995.
ODC EXHIBIT 6  Order of Dismissal, C.A. No. 95C-07-230 (Judge DelPesco), dated September 25, 1995.
ODC EXHIBIT 7  Copy of Docket Sheet of United States District Court for the District of Columbia for C.A. No. 97-CV-429.
ODC EXHIBIT 8  Memorandum Opinion and Order of the United States District Court for the District of Columbia and Order Granting Defendant's Motions to Dismiss, Civil Action No. 97CV0429 (RMU)  filed January 27, 1998.
ODC EXHIBIT 10  Order of the United States Court of Appeals for the District of Columbia Circuit, No. 98-5077  filed July 15, 1998 affirming District Court Order.
ODC EXHIBIT 11  Memorandum Opinion and Amended Order in the Court of Chancery of the State of Delaware in and for New Castle County: C.A. No. 12055, 1998 WL 892642 (V.C.Jacobs) dated December 11, 1998 and December 21, 1998.
ODC EXHIBIT 12  Order, C.A. No. 12055, (V.C. Jacobs) dated May 11, 1999.
ODC EXHIBIT 13  May 17, 1999 letter from ODC to H. Edward Maull, Esquire with the attached exhibit "D" pertaining to the issue of deemed admissions (12/9/98 letter from prior Chair of the Board On Professional Responsibility, Steven J. Rothschild, Esquire).
Shearin objected to the admission of these documents into evidence. Over this objection, the Board admitted all of the exhibits presented by the ODC as matters of public record and of which judicial notice could be taken. Shearin testified as a witness on her own behalf. The Board also permitted Shearin to respond pro se to the legal arguments made by ODC.

Alleged Violations
ODC alleged in its Petition that Shearin had violated six separate provisions of the DLRPC:
1. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, which contained a series of groundless and utterly fantastic claims and allegations, was a violation of Rule 3.1 of the Delaware Lawyers' Rules of Professional Conduct (the "DLRPC"), which generally states that a lawyer shall not engage in frivolous litigation."
2. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, which were actions taken contrary to the plain and express provisions of the Final Order, was a violation of Rule 3.4(c) of the DLRPC, which states that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal."
3. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, which contained numerous and *936 plainly baseless accusations against members of the Delaware and federal judiciary, and which directly violated orders of the Chancery Court, was a violation of Rule 3.5(c) of the DLRPC, which states that a lawyer shall not engage in conduct which is disruptive, discourteous, or degrading to a tribunal."
4. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, which did little more than harass, delay, and unnecessarily burden dozens of named defendants, was a violation of Rule 4.4 of the DLRPC, which states that a lawyer shall not use means that have no substantial purpose other than to delay or burden a third person."
5. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, which contained numerous and baseless personal attacks on the integrity of various members of the Delaware federal judiciary, was a violation of Rule 8.2 of the DLRPC, which states generally that a lawyer shall not make statements about the character or integrity of a member of the judiciary with reckless disregard for the truth or falsity of such statements."
6. "The Respondent's filing of the patently frivolous Shearin Suit and the Shearin Appeal, as well as her prosecution of such actions over many months, caused two federal courts, many judicial defendants, and many other members of the legal system to waste time and resources on matters that were in fact lacking in the slightest legal merit, and therefore was a violation of Rule 8.4(d) of the DLRPC, which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice."
In its Report, the Board found that four allegations of misconduct in violation of Rules 3.1, 3.4(c), 8.2 and 8.4(d) had been established and that two allegations of violations of Rules 3.5(c) and 4.4 had not been established. The sanction recommended by the Board was a three-year suspension from the practice of law.

THE BOARD'S EVIDENTIARY RULINGS ARE CORRECT
The evidence presented by ODC consisted of the documentary exhibits identified earlier in this opinion. We have concluded that those exhibits were admissible pursuant to Delaware Rules of Evidence 201 and 803(8). Delaware Rule of Evidence 201 provides for judicial notice of adjudicative facts that are not subject to reasonable dispute because those facts are capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. Delaware Rule of Evidence 803(8) is a well-recognized exception to the Hearsay Rule for public records or reports.

SHEARIN VIOLATED RULE 3.1
Rule 3.1 of the DLRPC provides that "a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, when the lawyer knows or it is obvious that there is no non-frivolous basis for doing so; however, this does not preclude a lawyer from making a good faith argument for an extension, modification or reversal of existing law." In its Petition, ODC alleged that Shearin violated Rule 3.1 because the Shearin lawsuit and the subsequent appeal "were frivolous in nature and contained groundless and utterly fantastic claims and allegations."
In response to this allegation, Shearin argued that Rule 3.1 did not apply because she was not acting as the attorney for Bishop Jackson and also because she was a pro se litigant with respect to the "Shearin Claims." Shearin did admit, however, that she was the one who had drafted the Complaint:
I drafted it and then showed it to the Bishop and he made some comments. I mean, we did it together. But I drafted the main part of it because I had most of the documents with the names and addresses and everything. I did put the legal language in and everything, but he also had some input in it. It wasn't that *937 I did it and he just signed it. I want you to understand we both did it, but I did the main part of the writing.
The record reflects that the Complaint was signed by Shearin and Delbert Jackson.
The Board rejected Shearin's argument and concluded that her role in the Shearin Lawsuit was governed by the provisions of Rule 3.1. The Board concluded that Shearin's conduct was in violation of Rule 3.1 on the basis of the District Court's Memorandum Opinion which dismissed the Shearin Lawsuit. In taking that action, the Federal judge found that "Ms. Shearin is both a plaintiff in the present action as well as counsel for plaintiffs."
The record reflects that Shearin exercised her right to appeal the Federal District Court's judgment. That judgment was affirmed by the Circuit Court of Appeals. Shearin's petition for a writ of certiorari was denied by the United States Supreme Court. Accordingly, the judgment entered against Shearin became final and was a proper basis for the Board's determination that Shearin violated Rule 3.1.

SHEARIN VIOLATED RULE 3.4(c)
Rule 3.4(c) provides that a "lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." The Board found that Shearin knowingly disobeyed the Chancery Court order, which expressly enjoined her, and her client, from interfering with the quiet title, operation, use, enjoyment and governance of the church properties and from holding themselves out as having any ownership interest in those properties.
The Board reviewed the content of the Shearin Suit and found that by seeking monetary relief from the Mother Congregation, Shearin was, in essence, again questioning the Mother Congregation's absolute right to title of the church properties which had been granted by the courts of the State of Delaware. The Board also found that by seeking punitive damages for the value of injury to her reputation and loss of business, as well as her legal expenses and counsel fees since the origination of the Mother Congregation litigation in 1991, Shearin was again putting into question the right of the Mother Congregation to maintain title to the properties.
Shearin argues that, because she was not acting in a representative capacity, she cannot be found to have violated Rule 3.4(c). According to Shearin, the Chancery Court order dealt exclusively with title to the church properties, which would fall under the "Jackson Claim." The record supports the Board's determination that the Shearin Suit, in seeking monetary damages from the Mother Congregation for properties taken from the AUMP Church since 1991, interfered with the rights of the Mother Congregation to enjoy quiet title to its properties. The Board's conclusion that Shearin violated Rule 3.4(c) is affirmed.

SHEARIN VIOLATED RULE 8.2
Rule 8.2 provides that "a lawyer shall not make a statement that the lawyer knows to be false, or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge..." Shearin contends that the Board placed a burden of proof on her to prove that her allegations against the Delaware Federal District Court Judge and the Vice Chancellor were true. According to Shearin, the Board presumed that the allegations were false and put the burden on Shearin to prove otherwise:
Respondent presented no objective evidence to support the statements about [the Delaware Federal District Court Judge]. Respondent further demonstrated a reckless disregard for the truth of her statements in characterizing the mental health of the Vice-Chancellor. Her statements had no objective basis in fact. It does not appear from *938 Respondent's testimony that she is medically qualified to make allegations as to mental health nor was any medical evidence presented ...
Shearin submits that the Board relieved ODC of its duty to present evidence in support of its allegations.
Shearin's arguments disregard the documentary exhibits admitted into evidence before the Board that reflect her allegations were dismissed as "frivolous" by a Federal District Court in the forum of her choice, the District of Columbia, and affirmed on appeal. Those final judicial determinations constituted sufficient credible evidence to carry ODC's burden of establishing the alleged violation of Rule 8.2 in the Petition. The burden then shifted to Shearin.
Alternatively, Shearin argues that she has a constitutional right to make these remarks concerning members of the judiciary. She cites Standing Committee on Discipline v. Yagman,[5] in which the Ninth Circuit held that a lawyer's First Amendment rights to freedom of speech were constitutionally guaranteed and he was shielded from disciplinary sanctions for that speech. The decision in Yagman is inconsistent with the holdings of this Court on the issue of constitutionally protected speech as applied to lawyers.
Based upon the United States Supreme Court's decision in Gentile, this Court has held that there are ethical obligations imposed upon a Delaware lawyer, which qualify the lawyer's constitutional right to freedom of speech.[6] Accordingly, members of the Delaware Bar are subject to disciplinary sanctions for speech consisting of intemperate and reckless personal attacks on the integrity of judicial officers.[7] This Court's holdings are supported by the Seventh Circuit Court of Appeals decision in Palmisano,[8] which declined to follow the Ninth Circuit's holding in Yagman.[9]
In Palmisano, the Seventh Circuit held that there must be some factual basis for the lawyer's accusations of judicial dishonesty before the First Amendment protections for such speech can apply.[10] This record reflects no factual basis for the Shearin assertions involving a Vice Chancellor's mental capacity and a former Delaware District Court Judge's conspiracy with other judges against her. The Board's conclusion that Shearin violated Rule 8.2 is affirmed.

SHEARIN VIOLATED RULE 8.4(d)
Rule 8.4(d) provides that is "professional misconduct for a lawyer to ... engage in *939 conduct that is prejudicial to the administration of justice." The ODC Petition alleged that "The Respondent's filing of the patently frivolous Shearin Suit, and the Shearin Appeal, as well as her prosecution of such actions over many months, caused two federal courts, many judicial defendants, and many other members of the legal system to waste time and resources on matters that were in fact lacking in the slightest legal merit ..."
The Board found that filing the Shearin Suit was an abuse of process and prejudicial to the administration of justice. The Petition alleged, inter alia, that the Shearin Suit required the Federal District Court to review 200 pleadings and amendments on charges which had already been finally determined by the courts of the State of Delaware. The filing of the Shearin Suit was also in disregard of the Delaware Chancery Court order, insofar as it placed the title to the Mother Congregation's property in question. Violations of court orders constitute conduct prejudicial to the administration of justice.[11] The Board's conclusion that Shearin violated Rule 8.4(d) is supported by the record.

APPROPRIATE SANCTION
The exclusive authority to impose sanctions for attorney misconduct is vested in this Court.[12] The guidelines for the imposition of sanctions are well-established. They are not designed to be either punitive or penal.[13] The relevant factors to consider in determining an appropriate sanction are: (1) the nature of the duty violated; (2) the lawyer's mental state; (3) the actual/potential injury caused by the misconduct; and (4) the existence of aggravating and mitigating circumstances.[14]
Shearin's attorney properly points out that "although the Petition alleged violations of separate provisions of the DLRPC, all of the allegations which the Board found to have been established arose from a common nucleus of facts  the substantive content of the Shearin Lawsuit that was filed in U.S. District Court for the District of Columbia, which was ultimately dismissed." He argues that a public reprimand is the most appropriate sanction because Shearin did not knowingly violate the Delaware Lawyers Rules of Professional Responsibility. Shearin's representation by her attorney in this appeal has been exemplary.
The second guideline for imposing sanctions is the lawyer's state of mind. Although ODC argues that a three-year suspension is the appropriate sanction, ODC's Answering Brief acknowledges Shearin's "statements to the Board clearly reflect that she does not recognize the wrongfulness of her conduct." This Court has concluded that it would be helpful, in deciding upon an appropriate sanction, to have a professional assessment of Shearin's mental state.

CONCLUSION
The Board's judgment that Shearin violated four provisions in the Delaware Lawyers Rule of Professional Responsibility is affirmed. The Court will retain jurisdiction to decide upon an appropriate sanction.
NOTES
[1] The facts are taken almost verbatim from Shearin's Opening Brief.
[2] See Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church, Del.Ch., 1992 WL 83518, 1992 Del.Ch., LEXIS 89 (April 22, 1992).
[3] See In re Shearin, Del.Supr., 721 A.2d 157 (1998) (per curiam), cert. denied, 526 U.S. 1122, 119 S.Ct. 1776 (1999) ("Shearin I").
[4] "Under the Rooker-Feldman doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with such a state adjudication." Gulla v. North Strabane Township, 3rd Cir., 146 F.3d 168 (1998); see District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).
[5] 9th Cir., 55 F.3d 1430, 1438 (1995).
[6] Gentile v. Nevada Bar, 501 U.S. 1030, 1065, 1076, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). See also Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).
[7] See In re Guy, Del.Supr., 756 A.2d 875, 877-79 (2000) (per curiam) (affirming the Board's conclusion that Guy had violated rule 8.2, in the course of representing a criminal defendant, based upon his written assertions in a letter to a Superior Court Judge that the Judge acted with racial bias against him) (citing Gentile v. State Bar of Nevada, 501 U.S. 1030, 1081-82, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (O'Connor, J., concurring) ("Lawyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech.")); In re Guy, Del.Supr., No. 138, 1995, Holland, J., 670 A.2d 1338 (Sept. 13, 1995) (ORDER), cert denied, 516 U.S. 1115, 116 S.Ct. 917 (1996) (affirming the Board's conclusion that Guy had violated rules 3.5(c) and 8.2 by directing a letter to the Chief Justice, which contained personal attacks against him); Shearin I, 721 A.2d at 162 (Shearin violated Rule 3.5(c) for filing a reply brief which contained personal attacks against the trial judge and allegations that he was bribed by the opposing party to the litigation.).
[8] In re Palmisano, 7th Cir., 70 F.3d 483 (1995). See also, Randy J. Holland, Attorney's Media Contacts: Some Ethical Considerations, Fed.Law., Feb. 1996, at 26.
[9] Standing Committee on Discipline v. Yagman, 9th Cir., 55 F.3d 1430, 1438 (1995).
[10] Id. at 487.
[11] See In re Tos, Del.Supr., 576 A.2d 607 (1990).
[12] Shearin I, 721 A.2d at 165.
[13] Id. at 166.
[14] In re Mekler, Del.Supr., 669 A.2d 655, 668 (1995). The Court has also looked for guidance to the ABA Standards for Imposing Lawyer Sanctions. Shearin I, 721 A.2d at 165-166.